## REES v. ANDREWS et al.; BUTLER, Appellant.

### Division One, June 18, 1902.

1. **Appointment of Receiver:** TAKING POSSESSION OF PROPERTY: NOTICE. Before an equity court can make an order taking property out of the possession of one of the persons to be affected and placing it in the hands of a receiver, such person must have notice and an opportunity to be heard. This is the rule, to which there are only two exceptions: first, where the defendant is a non-resident or conceals himself to prevent service; second, where irreparable injury will probably ensue if the property is not brought into court forthwith and before notice can be served.

2. ——: ——: ——: PARTNERS: FRAUD. Where the petition of one partner, asking for the appointment of a receiver and that

Rees v. Andrews.

he be put into the possession of the goods of the partnership and of, a building leased by it (but which lease has been forfeited by the lessor), is bottomed entirely upon the proposition that the other partners have obtained possession of the partnership property, and the lessor of the building, by reason of fraud and a corrupt bargain between them and the lessor, no cause of action for summary proceedings, without notice, is stated.

·3. ——: ——: POSSESSION OF REAL PROPERTY. The possession of real estate can not be transferred from one to another of adverse claimants by the process of a court of equity appointing a receiver and ordering the party in possession to turn over the possession to the receiver and afterwards ordering the receiver to turn over the possession to the other claimant, if the plaintiff has an adequate remedy at law. Such a method would determine the right to possession of land without trial by jury.

4. ——: LEASE: ASSIGNMENT: NEW PARTNER. The lease of a theatre building prohibited any assignment without the lessor's consent. The lessee, by the lessor's consent, assigned it to a partnership of three men. Afterwards, a woman was taken into the partnership without the lessor's knowledge or consent, but before this was done she applied to the lessor's agent for the lessor's consent to an assignment of the lease to her, and such consent was refused, on the ground that the lessor would not consent to any woman having any interest in the lease. Afterwards, when the partnership had become wholly insolvent and was unable to fulfill the terms of the lease, the lessor's agent declared it forfeited, and possession was given to him by the other partners. Thereupon the woman, alleging that this surrender of possession was the result of a corrupt bargain between her partners and the lessor, brought suit to have a receiver appointed to take possession of both the partnership property and the building. *Held*, that, as between the lessor and herself, she had no interest in the lease, and she had no rights thereunder that an equity court could be called upon to protect.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*Cook & Gossett* for appellant.

(1)   One in possession of realty, claiming right thereto, can not, in absence of express statutory provision, be deprived of that possession by appointment of a receiver or injunction, or both, in an action to which he is made defendant, merely because he holds such possession whether rightful or wrongful, and especially is this true where the defendant is unquestionably solvent.   Pullis v. Pullis, 157 Mo. 580.   (2)   In this action the appellant had and has no interest in the partnership troubles of the Andrews Opera Company, and the petition alleges no object or reason for making him defendant, except that he is in possession of his own realty under claim of forfeiture and surrender of a lease made by him, and the sole question between him and any person claiming under such lease in any manner is that of bare right of possession of the land.   This can only be legally determined in an action of ejectment or detainer.   The Constitution of this State (sec. 28, art. 2, Bill of Rights) provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate."   When this was adopted, and at all times, it has never been the practice or law in this State to exercise the extraordinary equitable right of receivership or injunction to oust a party from the adverse possession of realty, except as ancillary to an equitable action to which he is properly made defendant on other grounds than the mere fact that he holds such possession. Pullis v. Pullis, supra; Black v. Jackson, 177 U. S. 350; s. c., 44 L. E. 801; Benoist v. Thomas, 121 Mo. 660; State v. Merriam, 122 Mo. 435; Chandler v. Graham (Mich.), 82 N. W. 814; s. c., 123 Mich. 327; Tabor v. Cook, 15 Mich. 322.   (3) It is also contrary to the statute declaratory of this section of the Constitution.   Sec. 691, R. S. 1899; Briggs v. Railroad, 111 Mo. 174.   (4)   The appointment of a receiver in this case is also contrary to the general (common) law of equity and equity practice.   Merriam v. Railroad, 136 Mo. 160.

*Lewis H. Hatfield* and *Arthur S. Lyman* for respondent.

(1)   On an appeal from an order of the trial court in re-
fusing to revoke the appointment of a receiver, this court will
review the entire record, and determine whether there was any
ground upon which the receiver should have been appointed or
upon which the court should have refused to revoke the ap-
pointment, as the case should be.   Merriman v. Railroad,
136 Mo. 145; Glover v. Inv. Co., 138 Mo. 408.   According to
the great weight of authority, that review should be directed
to discover whether the lower court has been guilty of abuse
of discretion, an "abuse of power," in making an appointment.
If it has not, the appellate court will not interfere with the
appointment.   Aderson's Beach on Receivers, 112, 118;
Prouder v. Tate, 96 Ind. 330; Naylor v. Sidener, 106 Ind.
179; Wolf v. Chaflin, 81 Ga. 64; Journey v. Brown, 2 Dutch
111; Beaumont v. Beaumont, 166 Pa. St. 615; Crittenden v.
Coleman, 70 Ga. 293; Sanders v. Slaughter, 89 Ga. 34; Nun-
cocks'v. Shingle Co., 110 N. C. 230; Flecker v. Railroad, 48
Kan. 577; Cemetery Co. v. Drew, 36 S. W. 802; Jacobs v.
Gibson, 9 Neb. 380; 20 Am. and Eng. Ency. Law (1 Ed.),
19; 2 Story, Equity Jurisdiction (12 Ed.), 831.   (2)   A
person in possession of real estate, even under a prima facie
title, can be deprived of such possession by a receiver, where
it is shown that such possession has been obtained by fraud.
Smith on Receiverships, p. 47; Sobernheimer v. Wheeler, 45
N. J. Eq. 614; Corcoran v. Doll, 35 Cal. 476; Rogers v. Mar-
shall, 6 Abb. Pr. (N. S.) 457.   In this case the evidence of
fraudulent conspiracy on the part of all the defendants, in-
cluding appellant, against respondent and King, is overwhelm-
ing.   (a) The appointment of the receiver was not only in
accord with equity practice, but was absolutely necessary for
the protection of the rights of respondent and defendant
King, in view of the conduct of the defendants, Andrews,
Drennon and appellant.   Cox v. Volkert, 86 Mo. 506; Beach

on Receivers, secs. 480-484; Oil Co. v. Petroleum Co., 57 Pa. St. 83. (b) There was no forfeiture of the lease for cause, that is, for failure to furnish heat, water and steam to the hotel on the seventh or eighth day of October, 1901. The water was not shut off at all. Nor was the heat or steam, except as usually done. (c) The attempted surrender of the premises by George Andrews was without authority from his co-partners, was done without their consent or knowledge, and was void as to them. Cayton v. Hardy, 27 Mo. 536; Clark v. Rivers, 33 Mo. 579; Lowman v. Sheets, 124 Ind. 416; Sobernheimer v. Wheeler, supra; McNair v. Wilcox, 121 Pa. St. 437; Feucht v. Evans, 52 Ark. 556. Moreover, it was done in pursuance of the fraudulent intention to freeze out respondent and defendant King, and was done by collusion with appellant through his agent. (3) Appellant having come into possession of this theater by fraud, to which he was a party, he insists that respondent Rees, or the receiver, must resort to an action at law to dispossess him. In this he seeks to take advantage of his own wrong. Courts of equity have the authority, in cases where the possession is charged to have been by fraud, and where there is a strong probability that defendant would be ousted on final hearing, to put the receiver into possession *pendente lite*. Smith on Receivership, sec. 15, p. 47; Cox v. Volkert, 86 Mo. 506; Keeney v. Ins. Co., 71 N. Y. 401; Vause v. Woods, 46 Miss. 120. (4) Appellant was not entitled to a trial by jury of the question of his right to possession. It was charged, and clearly shown, that the possession, whether it be claimed under the alleged surrender or under the alleged forfeiture, was fraudulent. Under these circumstances the court properly ordered the receiver to take possession. Smith on Receivership, sec. 15, p. 47; Beach on Receivers, secs. 480-484; Oil Co. v. Petroleum Co., supra.

MARSHALL, J.—Appeal under section 806, Revised Statutes 1899, from an order of the circuit court of Jackson

county, refusing to revoke an interlocutory order appointing a receiver.

Edward Butler is the owner of the property on the northwest corner of Twelfth and Central streets in Kansas City, together with the improvements situate thereon, which consist of a theater building, formerly called the Standard Theater Building, but now called the Century Theater, and a hotel building, called the Century Hotel. At the times hereinafter stated the hotel was leased to one Warrick, and by the terms of the lease the lessor was obligated to furnish steam, hot water and heat to the hotel, and the barbershop, bathroom and saloon located therein, under a penalty of forfeiture of the lease. On the nineteenth of March, 1901, Butler leased the theater building to one Bowles, for a term of five years, and in addition to the cash rental the lessee agreed to furnish the steam, hot water and heat to the hotel, barbershop, bathroom and saloon that Butler was under obligation, as stated, to furnish. The cash rental was fully paid up to December 31, 1901. The lease to Bowles prohibited any assignment or subletting without Butler's consent. On July 29, 1901, Bowles, with Butler's consent, assigned the lease to the Andrews Opera Company, a co-partnership composed at that time of George Andrews, Edward M. Andrews, and C. W. King. Afterwards by agreement dated August 2, 1901, the co-partnership was formed between Mrs. Lydia E. Rees, the plaintiff, and George Andrews, Edward M. Andrews and C. W. King, under the name of the "Andrews Opera Company," and by the articles of co-partnership it was recited that the lease was owned by said parties jointly, that is, that Mrs. Rees owned one-half thereof and the Andrews Opera Company owned the other half. It does not appear, however, that Butler ever consented to an assignment of any part of the lease to Mrs. Rees, nor that he ever knew that she was a member of the co-partnership of the An-

drews Opera Company. On the contrary, it does expressly appear from the record that before the assignment to the Andrews Opera Company, and while Bowles was the lessee, Mrs. Rees applied to Butler's agent for Butler's consent to an assignment by Bowles to Mrs. Rees of a half interest in the lease, and that such consent was refused, on the ground that Butler would not rent the building to any woman, or consent to any woman having any interest in the lease. . It also appears that Mrs. Rees was not a member of the co-partnership of the Andrews Opera Company, on July 29, 1901, when Butler consented to the assignment of the Bowles lease to the Andrews Opera Company, and did not become a member of that firm until August 2, 1901, and it does not appear that Butler ever knew of her becoming a member of that firm at that time or until the troubles herein spoken of arose, nor that he ever consented that the firm of Andrews Opera Company, as reorganized on August 2, 1901, should be the assignees of the lease.

The Andrews Opera Company entered upon the business of giving performances in the theater, and continued so to do until October 2, 1901, when it became financially embarrassed. On that date Butler notified the Andrews Opera Company that he would forfeit the lease if they failed to furnish steam, heat and hot water to the hotel. The opera company gave no performances thereafter, but continued to furnish steam, heat and hot water to the hotel until October 7, when the wages of the engineer being in arrears, the water license being due and unpaid, and the coal and other bills being unpaid, the engineer quit work, and George Andrews notified Butler's agent that the Andrews Opera Company could not longer comply with the terms of the lease. Thereupon Butler's agent went to the theater and met the two Andrews, King, and the plaintiff, and informed them that he would forfeit the lease. The plaintiff offered to guarantee the pay-

ment of the debts and bills aforesaid, but Butler's agent told her that would not do. Thereupon she gave the engineer a check for his wages and arranged with the city about the water license, and it being after the close of the bank for the day, the engineer resumed work. On the next day the check for the engineer's wages was presented at the bank for payment and payment refused, and thereupon the engineer again quit · and left the place. Butler's agent immediately went to the premises and in the presence of the plaintiff declared the lease forfeited, and George Andrews, who was the general manager of the Andrews Opera Company, surrendered the possession of the premises to Butler's agent, and notified him that the Andrews Opera Company was unable to carry out the terms of the lease. At that time the actors and players were unpaid, and there had been no performance given in the theater since the second of October because Browning, King & Co., having that day begun an attachment suit against the Andrews Opera Company, seized the money in the box office and took possession of all the property of the company, and thus rendered it impossible for the company to further carry on its business.

. It is due to Mrs. Rees to say that although she had no money in bank with which to meet her check to the engineer, she had a cashier's check for a larger amount than the sum of the check she gave the engineer, which she intended depositing the next day to meet her check, but which she was prevented from doing before her check was dishonored, by reason of what she claims to have been a trick played on her by George Andrews, in this, that a man she charges (but does not show) was a tool of said Andrews called at her house just as she was about to start to the bank to make the deposit, and told her to wait at home to see a man who was coming to the house to buy her furniture, and that by waiting for the

supposed purchaser, who never arrived, she did not reach the bank until after her check was dishonored.

From October 2d, to October 8th, the theater was closed, but the Andrews and King and Mrs. Rees were endeavoring to arrange their matters in some way. The only thing of value, outside of the property that had been seized under the attachment, that the company had, was the lease. This they tried to realize something from. It was proposed to incorporate a company and continue the business, but George Andrews would not consent. It was proposed to assign the lease to O. D. Woodward, so that performances could be given and money raised to pay the actors and the creditors, and Butler consented to this, but George Andrews refused.

In this emergency, Butler, from day to day, beginning on October 9th and continuing until October 22d, 1901, granted to George Andrews, separate, daily licenses to give performances in the theater in consideration of the payment of fifteen dollars a night, and upon the express condition that it was to be a mere license and not a lease. Under this arrangement George Andrews continued to give daily performances until restrained by the court in this case on October 22, 1901.

On October 19, 1901, Mrs. Rees instituted this action, making George Andrews, Edward M. Andrews and C. W. King, defendants. The petition alleges a partnership between plaintiff and defendants entered into on August 2, 1901, for the purpose of giving performances at the Century Theater; and that such performances were given from September 9th to October 2d, 1901; that by the terms of the co-partnership agreement plaintiff was entitled to the exclusive use of the living rooms in the upper story of the building, but that in violation of that agreement the defendants took and retained possession thereof; that on October 7, 1901, George Andrews, for the purpose of defrauding plaintiff, entered into a corrupt

agreement with Butler's agent, in pursuance whereof Andrews attempted to surrender possession of the theater to said agent, and afterwards on the same day and for the same purpose said Andrews pretended to accept possession of the theater from said agent for himself personally, to the exclusion of the plaintiff; that the plaintiff was the treasurer, under bond, of the Andrews Opera Company, and entitled to the custody of all money, but that the company refused to allow her to have or receive such money; that contrary to the articles of co-partnership, and without plaintiff's approval, the defendants have incurred large debts; that the defendants are insolvent and unable to pay their proportion of the debts of the company; that the company owes not less than two thousand dollars to other persons, and over three thousand dollars to the plaintiff; that George Andrews had acted in bad faith towards the plaintiff and the other members of the firm, in this, that although he knew the assignment of the lease by Bowles to the Andrews Opera Company, on July 29, 1901, was to be for the benefit of a co-partnership, thereafter to be formed between plaintiff and the two Andrews and King, yet he contracted with Bowles to sell to him, for $350, a half interest in the business to be done by the Andrews Opera Company, and Bowles agreed with George Andrews to divide with him the money received for the transfer of the lease, under which, it is alleged, George Andrews received five hundred dollars of the one thousand dollars paid for the lease, which he, George Andrews, had urged the plaintiff and her co-partners to pay for the lease; that the plaintiff was in reality the owner of a one-half interest in the Bowles lease before it was transferred to the opera company; that the partnership owns certain personal property of the value of less than five hundred dollars. The prayer of the petition is for the appointment of a receiver to take charge of the property, to carry on the business of the co-partnership

for the benefit of the partners and their creditors, to ascertain and pay off, as far as the property will do so, the debts; that the defendants be restrained and enjoined from interfering with or disposing of any of the partnership property or any rights under the lease; that the partnership be dissolved, and for an accounting, and for further orders.   The petition was verified, not as true, but as "true to the best of her knowledge and belief." Upon this petition, and, so far as appears from this record, without any notice to the defendants, the court adjudged that a necessity existed for the appointment of a temporary receiver, and accordingly appointed a temporary receiver, and ordered him to take immediate possession of the Century Theater, and of all property belonging to the Andrews Opera Company, and directed him to continue the performances at the theater pending the appointment of a receiver *pendente lite*.

When the receiver thus appointed went to the theater to take possession he found Butler's agent in possession thereof, and he refused to turn over the property to the receiver.   Thereupon, on October 21st, the plaintiff filed a supplemental or amended petition, in which, in addition to the two Andrews and King, Butler, his agent Drennon, and the lessee of the Hotel Warrick, were made parties defendant. The amended petition was like the original petition except as follows: *first,* it charged that George Andrews entered into a corrupt agreement with Butler and with his agent Drennon to defraud the plaintiff by surrendering the possession of the theater to Butler, whereas the original petition limited the charge to the agent, and imputed nothing of the kind to Butler; *second,* it set up the facts hereinbefore stated about the engineer's wages, his quitting on the seventh of October and the surrender of the possession by George Andrews to Butler's agent, and charged that such proceedings were had pursuant to a corrupt and fraudulent conspiracy between

George .Andrews and Butler, Drennon and Warrick, to defraud the plaintiff by producing a pretended forfeiture of the lease. This amended petition was also verified by the plaintiff as "true to the best of her knowledge and belief."

Upon the presentation of this amended petition and without any notice to any one, the circuit court on October 26, 1901, issued an injunction against the defendants, prohibiting them from interfering with or disposing of any of the property of the Andrews Opera Company; appointed Charles J. O'Malley receiver "of all and singular the properties, goods and effects of the Andrews Opera Company, including the lease of the Standard (now Century) Theater, now owned and held by said Andrews Opera Company;" ordered that the receiver "immediately proceed to take possession of the Century Theater Building and of all and singular the other property and effects of the said Andrews Opera Company;" commanded the two Andrews,· Drennon, Warrick and Butler to deliver at once to the receiver all the property of the Andrws Opera Company in their possession, and specially ordered Butler to surrender and deliver up to the receiver full and complete possession of the theater building.

On the same day Butler filed a motion asking that so much of the order as commanded him to turn over his theater building to the receiver be revoked, alleging that such order was without authority of law and that such order so summarily ousting him from the possession of his property was contrary to the Constitution of Missouri, and particularly to section 28 of article 2, in that it deprived him of the right of a trial by jury. In support of and in opposition to this motion the respective parties filed affidavits; from which the facts herein stated have been collected and compiled. The circuit court overruled the motion to vacate the appointment of the receiver and the defendant Butler appealed.

## I.

Many reasons suggest themselves showing that the order appealed from, so far as it directs the receiver to take immediate possession and the defendant to surrender and deliver to the receiver the full and complete possession of the theater building, is without authority of law. No reason has been suggested, and none can be conceived, which justifies or permits such an order.

It would not be profitable, and it is not necessary, at this time to enter upon an extended or exhaustive discussion of the power of courts of equity, in proper cases, to take the property in controversy out of the possession of one of the parties litigant and place it in the possession of a receiver. Some of the cases treat such a proceeding as analogous to an attachment in an action at law, and some hold that it partakes somewhat of the nature of a writ of injunction. [17 Enc. Pl. and Pr., p. 683, and cases cited in notes.] But all the cases concur in holding that before such an order is made the persons to be affected must have notice and an opportunity to be heard, and the only exceptions to this rule are, first, where the defendants are non-residents or conceal themselves to prevent service of notice, and, second, where irreparable injury will probably ensue if the property is not brought into court at once and before notice can be served. [17 Enc. Pl. and Pr., p. 719, and cases; Smith on Receiverhsips, p. 14; Beach on Receivers, p. 153, sec. 148. Consult Railroad v. Wear, 135 Mo. l. c. 262, 263, and 253.]

In the case at bar, no such excusatory conditions are present. Butler is a resident of Missouri and could have been brought into the circuit court of Jackson county in this case. The theater building belonged to Butler. He was not insolvent. On the contrary, the record shows that he owns over two hundred thousand dollars worth of real estate in

Kansas City. The petition alleges that the two Andrews and King are insolvent, and the proof shows that the Andrews Opera Company is insolvent, having less than five hundred dollars' worth of property, which was seized on attachment on the second of October, and owing over five thousand dollars. The plaintiff is the only member of the firm who seems to have had any money, and the record shows that she only had a cashier's check for forty-two dollars, fifteen dollars in cash, and some household furniture, the value of which is not stated. The petition does not charge that Butler is insolvent, nor that irreparable injury would probably ensue if the property is not brought into court at once and before notice could be served, nor yet, that there is imminent danger of loss, or great damage, or that it is a case of gravest emergency. [Smith on Receiverships, p. 17, and cases in notes.]

In fact the petition is bottomed entirely upon the proposition that the defendant obtained the possession of his theater by fraud, and, hence it is contended that it was within the power of a court of equity to appoint a receiver, order the owner to turn his property over to the receiver, and thus oust the owner from possession.

The fraud alleged is, solely, that after Browning, King & Co., had attached the box receipts and all the property of the partnership of the Andrews Opera Company, and after the theater had remained closed from the second of October to the seventh of October, the engineer quit because his week's wages were not paid. This would have resulted in the heat, hot water and steam being shut off from the hotel adjoining the theater. The partnership as alleged in the petition, and it is the conceded fact, was then wholly insolvent, its property was in the hands of the constable, the actors were unpaid and clamorous, the engineer's wages for a week were due, the water license was due, the coal bills were unpaid. In

such dire straights George Andrews, the general manager of the partnership, notified Butler's agent that the firm was unable to comply with the terms of the lease. The agent went to the building and notified the Andrews Opera Company, in plaintiff's presence, that he had come to forfeit the lease. The plaintiff offered to guarantee the engineer's wages, but was informed that would not do. She then gave her check to the engineer for his wages. He resumed his work, but the next day when the check was presented and payment refused, he quit, and thereupon Andrews surrendered the possession of the theater to Butler's agent, who proceeded to carry out the terms of his lease to the hotel by furnishing heat, hot water, etc., from the plant in the theater building to the hotel building.

It is charged in the petition that George Andrews instigated the engineer to quit and to give as a reason the fact that his wages were in arrears, and also that he tricked the plaintiff into not getting to the bank in time to make a deposit to protect her check. But there is not a scintilla of legal evidence adduced to support any of these or any of the other allegations of fraud in the case. So that the trial court not only erred in ordering the defendant Butler to turn over the theater to the receiver, without giving Butler notice and an opportunity to be heard, but it further erred in refusing to revoke the said order when the facts were presented to it. The evidence wholly fails to show that Butler or his agent were guilty of any fraud in respect to forfeiting the lease or in getting possession of the property. He only did what any owner similarly situated and similarly obligated to furnish heat and hot water to the hotel, would have done under the same circumstances, and there is a complete lack of any evidence tending to show any oppression or overreaching on his part.

Upon the facts, then, the order should have been re-

voked. [Pullis v. Pullis, 157 Mo. l. c. 580.] For this rea-
son it is not deemed necessary to discuss the power of a court
of equity to oust a party in possession of real property and
turn it over to a receiver, simply because the petition alleges
that the possession was obtained by fraud. It is only nec-
essary to say here that when analyzed the cases that accord
such power to a court of equity are generally cases where
two parties were entitled to the joint possession or easement
and the one ousted the other, or else they were cases where
the possession of the *res,* was a mere incident to the deter-
mination of the controversy, and where no rights of third
persons were involved.

Of course, the possession of real estate can not be trans-
ferred from one to another of adverse claimants by the pro-
cess of a court of equity appointing a receiver and ordering
the party in possession to turn over the possession to the re-
ceiver and afterwards ordering the receiver to turn over the
possession to the other party. Such a proceeding would be
a speedy method of settling land questions. It would render
useless the time-honored remedy of ejectment, and would
emasculate the modern, summary remedy of forcible or un-
lawful entry and detainer. It would do away with a trial
by jury and the decree would be *res adjudicata* of the question
of right of possession, a result not heretofore attainable by a
suit in ejectment. And such a newly-invented remedy, would,
of course, carry with it punishment as for a contempt, if the
defendant failed to pay the damages for detention that might
be awarded, and thus a new method of collecting a judgment
from an insolvent or covered-up debtor would be afforded.
But as Utopian as this may be, the law has not yet been so
changed that equity has power or jurisdiction to act where
the parties litigant have an adequate remedy at law. And
such was the case here. If Butler by disseizin or unlawfully
and without force obtained possession of the theater building

contrary to his rights under the lease, the law afforded a complete and adequate remedy to the receiver to regain the possession for the benefit of the firm of the Andrews Opera Company, and as Butler was entirely solvent, the law also afforded ample remedy to the receiver to recover any damages the firm's business may have suffered.    But in such a case as this, where the Andrews Opera Company was wholly insolvent, its property seized under an attachment, where it was wholly unable to carry out the terms of the lease to it, where every opportunity was given by Butler to that company and to the plaintiff to get something out of the lease, and when Butler never knew that the plaintiff was a member of the partnership of the Andrews Opera Company, and never consented to her having any interest in the leaase, but on the contrary expressly refused to consent to the plaintiff or any woman having any interest in the lease, it would be unprecedented to permit the order complained of to stand, and in a suit of this character, the main purpose of which is to dissolve and wind up a partnership of which Butler is not a member, to oust the owner from the possession of his own property, and to turn it over to a receiver of a co-partnership that is confessedly insolvent and has no other property or means for complying with or carrying out the terms of the lease, would be without a parallel in the law.

But aside from all these considerations, the plaintiff has not shown that she has any interest in the lease.    On the contrary, it clearly appears that while as between herself and the two Andrews and King, she, having an interest in the partnership, has, *sub modo,* an interest in the lease, yet as between Butler and herself she has no interest in the lease.    For Butler expressly refused to consent to any assignment of the lease, or any interest in it, to her, and when he consented to the assignment of the lease from Bowles to the Andrews Opera Company, that company was composed of the two Andrews and

Vol. 169 mo—13

King, and the plaintiff did not become a member of the firm until after that assignment. Hence, the relation of lessor and lessee never existed between the plaintiff and Butler. Therefore, she had no rights under the lease that a court could be called on to protect.

For these reasons the judgment of the circuit court refusing to vacate the order directing and ordering the defendant Butler to turn over to the receiver the possession of the Century Theater Building, is reversed.

All concur.