THE STATE ex rel. E. W. KOPKE v. JERRY MULLOY, Judge of Circuit Court, County of St. Louis, and RICHARD F. RALPH, Receiver.— 43 S. W. (2d) 806.

Division One, November 20, 1931.

*Lewis & Rice* and *R. W. Chubb* for relator; *Monroe Oppenheimer* of counsel.

*Wurdeman, Stevens & Hoester* and *John H. Haley* for respondents.

STURGIS, C.—This is an original proceeding in this court by writ of prohibition against one of the circuit judges of St. Louis County and a receiver appointed by him, to restrain them from further action in a case there pending. It challenges the jurisdiction of that court in what has been done and invokes the power of this court to prevent any further act in excess of the jurisdiction of that court. The defendant Judge Mulloy appointed defendant Ralph temporary receiver of the Fulton Iron Works Company, a Delaware corporation having its chief office, place of business, manufacturing plant, and most of its property in St. Louis County, Missouri. This action was taken by the judge on the filing and presentation to him of a petition entitled Lena A. Wurdeman v. Fulton Iron Works Company et al., without any sort of service on or notice to the defendant company or the individual defendants, or any of them. The order appointing the receiver empowered and directed him to at once take possession and charge of defendant's business and property to the exclusion of its officers and agents then in possession, the principal officers being named as parties defendant. The other individual defendants, ten in number, are alleged to compose an advisory committee of defendant's creditors, alleged to have large control and direction of its business. When we speak of defendant in respect to the proceedings in the circuit court, without other designation, we mean the Fulton Iron Works Company, and by plaintiff we mean Lena A. Wurdeman.

It stands conceded that the petition of Lena A. Wurdeman was filed and presented to the defendant judge of the circuit court, and the order appointing the receiver made, and bond filed and approved on Saturday afternoon of November 22, 1930. The circuit court also made an order that defendant appear in that court on the next Saturday, November 29th, and show cause, if any, why the appointment of the receiver should not be made permanent. Thereupon the relator, who was president of defendant company and in charge and control of its business, applied to this court for this writ of prohibition to restrain said circuit judge from taking further cognizance of said cause and the receiver from taking possession of or interfering with the possession of the Fulton Iron Works Company of its property and business.

The petition or application for our writ is sworn to and contains certified copies of the petition of Lena A. Wurdeman filed in the circuit court and the order of that court appointing the receiver. This court granted its preliminary writ of prohibition and ordered the respondents here to show cause on a day named why the same

should not be made permanent. The respondents have made return or answer in this court, to which the relator has filed his reply. In the answer the respondents deny many allegations of the petition for our writ and ask that on the facts stated therein the preliminary rule in prohibition be dissolved. In the reply the relator denies the affirmative matter set up in the respondents' answer and prays that on the pleadings, affidavits and exhibits herein filed that the alternative writ in prohibition be made permanent.

It will thus be seen that issues of fact are raised by the pleadings in this court which have no support except the verification of the pleadings, but the parties, by their submission of the case, treat such matters as non-essential to a proper disposition of the case here; and we find that the essential facts necessary for our decision are either expressly admitted or stand undisputed. Thus it stands conceded that the plaintiff in the case of Lena A. Wurdeman v. Fulton Iron Works Company and the individual defendants, filed her petition asking for the appointment of a receiver of that company, and that the same was at once and without any service on or notice to any of the defendants, and in their absence, acted on by the respondent judge, who, without any evidence other than the verification of the petition, made an order appointing Ralph temporary receiver with instructions and power to at once take possession of defendant's property, and fixing a future date for defendant to show cause why the receivership should not be made permanent. It is further conceded that, three days previous to this action, a suit of the same nature and for the same purpose, the petitions being practically alike and against the same defendant, had been filed in the same court by Swartwout Company and J. Harry Bedsar, and that Judge Lashly, one of the judges of the same court, before whom same was pending, had declined to act at once and without notice in appointing a receiver, but had fixed a day, November 25th, not yet reached, on which all parties would be heard; that such suit had been voluntarily dismissed on the same day the Lena A. Wurdeman suit was filed; that one of the attorneys for the Fulton Iron Works Company and the other defendants being proceeded against in both such suits, either by chance or from suspicion, appeared in court and learned of the dismissal of the old suit and the filing of the new one and of the order just made by Judge Mulloy appointing a receiver, and then stated that his client, the Fulton Iron Works Company, desired to offer evidence and be heard in such matter before the appointment of a receiver; that Judge Mulloy refused to hear any evidence or to further consider the appointment of a temporary receiver, as he had already made the order.

It is relator's contention here that not only did the respondent circuit judge act arbitrarily and in excess of his powers and juris-

diction in appointing a receiver without proof or hearing, but that the petition of Lena A. Wurdeman v. Fulton Iron Works Company et al., states no cause of action warranting the appointment of a receiver and certainly does not show any facts warranting such appointment without notice or hearing. We will, therefore, set out the facts stated in and the material allegations of such petition, omitting formal parts:

It is alleged that the defendant is a Delaware corporation with a capital stock of $1,000,000 preferred stock divided into 10,000 shares, and a capital of 88,500 shares of no-value common stock. The plaintiff owns 30 shares of the capital stock (preferred ?). The defendant is engaged in the business of manufacturing, selling and installing machinery, equipment and plans for refining and the manufacture of sugar, its plant and place of business being in St. Louis County, where its books and records are kept.

"Plaintiff further states that the defendant Fulton Iron Works Company now is and for some time has been insolvent; that the current and fixed liabilities of said defendant are in excess of $1,500,000, in addition to which there is a contingent liability against said defendant of over $600,000, on which said defendant in truth and fact will be held liable for not less than $500,000; that the actual reasonable value of the assets of said corporation does not exceed $1,200,000; that defendant now is and for many months has been operating at a great loss." Defendant Kopke is the president of defendant company and G. J. Kienzle is secretary.

"Plaintiff further states that defendants Kopke, Kienzle, and Steinbrader and a small group of stockholders associated with them are in complete control of defendant corporation, and own or control to themselves or others associated with them, and under their dominion and control, more than a majority of the shares of the capital stock of said company; that said individual defendants, and others acting in conjunction with them, which defendants and said others constitute the control of the major portion of the capital stock of said company and constitute all the officers and members of the board of directors of said company, have practically ceased performing their duties as such officers and directors, and that *said company cannot under any circumstances be operated at a profit;* that a continuation of said operations would continue to result in great loss to said company, and would ultimately result in a total loss of the capital invested by the stockholders and of the assets and property of said company which would otherwise be available for the payment of creditors.

"Plaintiff further states that said officers and directors in control of defendant company have turned over and surrendered the control and operation of said company to defendants (ten of them named),

who are creditors and representatives of creditors, said last named individual defendants constituting a committee of a small group of creditors of the defendant company, and that said officers and directors have wrongfully permitted said committee of creditors, by their said representatives, to take charge and management of all the property and assets of the defendant company, and to operate it primarily for their own use, benefit and protection, and that such action in surrendering said management to said committee was taken without the consent of the stockholders of defendant company and against the desires, wishes, and interests of the plaintiff and all other stockholders and creditors similarly situated; that such operation by said committee representing said group of creditors would be in the interest of said creditors and to the detriment of the stockholders and other creditors of the company, and that unless restrained and prevented by this court as herein prayed, said committee representing said group of creditors with consent and sanction of all officers of defendant company, will wrongfully continue to operate defendant company at great loss to the company and for the use and benefit of said small group of creditors to procure the payment of their debts, and in such manner that the property and assets of said corporation will be greatly depleted, resulting in loss and damage to the stockholders and other creditors of said company, and to the plaintiff.

"Plaintiff further states that the officers and directors of defendant company gave very little of their time toward the conduct of its affairs; that neither said officers and directors or said committee representing said creditors are competent or capable to conduct the business of said corporation, or able thereby to operate said company at any profit whatever, and that such attempt to do so will result in a continued loss and irreparable damage to the stockholders and other creditors of the company, and that the attempt to do so is for the purpose of and will result in a preference and unreasonable advantage to the small group of creditors represented by said committee, who said officers are attempting to favor.

"Plaintiff further states that the principal business of the defendant company has been and now is the manufacture of machinery and equipment for the refining and manufacture of sugar, and that the market for said machinery and equipment now is, for a long time has been, and will continue to be extremely *small and* limited, and *far less than is necessary to furnish sufficient business to justify the operation of defendant company's plant for said purpose;* that the said officers and directors of defendant company knew, and have long well known thereof, or in the exercise of reasonable business judgment should have known thereof, but nevertheless have continued operations in said manufacture at a loss, as aforesaid; that by reason of the condition of the sugar industry and market at the present time, and for a

8

long time heretofore, the purchasers or prospective purchasers of such machinery and equipment were unable to meet their obligations therefor, which was well known to said officers and directors of defendant, and is well known to said committee representing said group of creditors, but that, notwithstanding said conditions, they have caused and permitted the operation of said company at a loss, as aforesaid, *which was inevitable,* and that they will continue to do so, as aforesaid, resulting in *inevitable loss* unless prevented, as prayed herein; that for many months, and for more than a year, the officers and directors of defendant company have, notwithstanding the aforesaid conditions, been engaged in manufacturing and selling such machinery and equipment for the manufacture of sugar, and have been selling the same to persons engaged in said sugar industry, and have accepted during said period and accumulated a large amount of notes and accounts in payment thereof, practically all of which is overdue and has long been in default, and is uncollectible, and on which only an extremely small portion of the amount thereof can ever be realized.

''Plaintiff further states that in the obviously futile and manifestly imprudent operations of the business, as aforesaid, and mismanagement thereof, the officers and directors of defendant company have accumulated and said company now has notes receivable and accounts receivable in excess of $200,000 of the kind aforesaid, on which only a very small portion of the amount thereof, if any, can ever be realized, and have further, directly and indirectly, guaranteed other notes and obligations of similar character, which were so acquired in the business of the company, to the amount of about $1,400,000, on which guarantees the defendant company will be liable and sustain loss to the extent of about $1,000,000 or more.

''Plaintiff further states that, notwithstanding that defendant company has been operating at a large loss for many months, the said officers and directors of said company have been paying to themselves large salaries, far in excess of the value of their services and highly excessive *under the conditions of the company's affairs,* to the great damage of the defendant company and to stockholders, and to the prejudice of creditors, and that said officers and directors have failed and neglected to perform their duties as such and have permitted the affairs of the company to be mismanaged and neglected.

''Plaintiff further states that defendant company has numerous creditors who are threatening to file numerous suits and recover judgments and levy upon the property and assets of defendant company, and by the multiplicity of suits and the separate actions and executions will cause defendant company's assets to be dissipated and wasted, but that by the aid and intervention of this court and the appointment of a receiver herein and the administration of the assets and affairs of the defendant company thereby in an orderly manner

for the benefit of all creditors and stockholders, the assets and property of defendant company will be preserved for the benefit of all creditors and stockholders.

"Plaintiff further states that she brings this action on behalf of herself and all other stockholders and creditors of defendant company who may care to join with them in this suit, and that they have no adequate remedy at law and will suffer irreparable loss and damage unless granted the relief herein prayed, and that by reason of the facts heretofore stated, an application to the officers and directors of defendant company for relief or protection would be wholly futile and useless.

"Plaintiff further states that the business and affairs of the said defendant company have been grossly mismanaged and neglected by the officers and directors of said corporation, and that there are and have been internal dissensions and conflicts among the officers and directors, to the great harm and injury of said company, which will continue unless prevented by the relief herein prayed."

The prayer of the petition is "that this court forthwith appoint a temporary receiver, and, upon hearing, a permanent receiver, and that said receiver take charge of all the property, effects, assets, business and affairs of said defendant company, and that the assets and property of said company be assembled and marshaled, and that said receiver be authorized and directed to institute suits against the officers of said corporation for an accounting of their management and conduct of the business and to recover the excess of salaries paid to them, and to institute suit against such officers and other persons for damage and loss to the company by reason of mismanagement or otherwise, and to defend any suit or suits that may be instituted against said company, and *to sell all the assets of the company to liquidate the business thereof,* and to pay to all creditors the amounts due to said creditors, and divide the residue, if any, among the shareholders, and for such other and further relief as to the court shall seem meet and proper." (The italics, of course, are our own.)

It is contended by relator that the respondent circuit judge exceeded his power and acted in excess of his jurisdiction in appointing respondent Ralph receiver of this corporation with direction to take charge of its business and property, without any notice to or opportunity to be heard by the defendants in the circuit court action. The conceded facts show not only that notice could readily have been given to the opposite parties interested, but that the defendant corporation in that case appeared and asked that the court hear evidence as to the facts alleged in the petition and permit defendant to be heard as to the law and facts. No reason was given why this should not be done except that the court had already made the order a few minutes

earlier. Surely this matter was in the breast of the court till the day's business was ended and some steps taken in carrying out the court's order to the receiver. The order to have the defendant appear a week later, when the receiver's possession of defendant's property would be complete, and then show cause why the receiver should not be made permanent, was obviously inadequate to preserve defendant's rights. Nor was there anything alleged in the petition, which we have set out almost in full, showing urgent necessity for the immediate appointment of a receiver. There was no impending loss or destruction of defendant's property or dissipation or removal beyond the court's jurisdiction such as brooks no delay. The evils of mismanagement and losses complained of were of long standing or at least not creating an emergency calling for such drastic action as the appointment of a receiver to take immediate possession of defendant's property and business.

The rule in this respect is stated in 53 Corpus Juris 59, thus: ''A receiver may be properly appointed without notice, and before giving the adverse party an opportunity to be heard, in, and only in, an extreme and exceptional case, in which there is a great emergency and an imperious and most stringent necessity for an immediate appointment, as where the adverse party is out of the jurisdiction of the court or cannot be found and served with notice, or, for some other reason, it is absolutely and imperatively necessary for the court to interfere, before the lapse of the time required to give notice and afford a hearing, in order to prevent loss, waste, destruction, irreparable injury, or the defeat of the petitioner's rights, or the giving of notice would jeopardize the delivery, safety, custody, or control of the property over which the receivership is to be extended, and the rights of the complaining party may be amply and sufficiently protected in no other way, or by no other remedy, such as a temporary injunction or restraining order.'' [1 Clark on Receivers (2 Ed.) sec. 82.]

In State ex rel. v. Reynolds, 275 Mo. 113, 126, it is said that notice may be dispensed with when ''the need is a crying one.'' And in St. Louis, etc., Railroad Co. v. Wear, 135 Mo. 230, 261, this court said: ''The facts which justify the appointment of a receiver (without notice to the party whose possession is disturbed) are exceptional, at best. Nothing but the plainest showing of an imperative necessity for such an order to prevent a failure of justice should move a court to grant a motion to that end.''

See Merriam v. Railway Co., 136 Mo. 145, 160.

In this and in other states the appointment of a receiver in violation of the rule of law just stated is illegal, void and unenforceable and affords ground for prohibition. [53 C. J. 62; State ex rel. v. Dearing, 184 Mo. 647, 664; St. Louis, etc., Railroad Co. v. Wear, 135 Mo. 230, 261; Rees v. Andrews, 169 Mo. 177, 189.]

In Rees v. Andrews, supra, this court said: "It would not be profitable, and it is not necessary, at this time to enter upon an extended or exhausted discussion of the power of courts of equity, in proper cases, to take the property in controversy out of the possession of one of the parties litigant and place it in the possession of a receiver. . . . But all the cases concur in holding that before such an order is made the persons to be affected must have notice and an opportunity to be heard, and the only exceptions to this rule are, first, where the defendants are nonresidents or conceal themselves to prevent service of notice, and, second, where irreparable injury will probably ensue if the property is not brought into court at once and before notice can be served."

And in State ex rel. v. Dearing, 184 Mo. 647, 664, the law is stated thus: "But in this case the office of the company is in St. Louis, where it has officers who could be served with process to bring them into court. The real estate is in Missouri, and can not be disposed of because the plaintiff has filed a *lis pendens*. The personal property is principally in Washington County, and there is no allegation that it is being wasted or about to be removed from the State. There is no emergency or exigency whatever which authorizes the appointment of a receiver. . . . The trial court clearly exceeded its jurisdiction in appointing a receiver."

In Nottebaum v. Leckie, 31 Fed. (2d) 556, it is held that the appointment of a receiver without notice to and knowledge of the defendant till such receiver takes possession of the property, is a violation of the due-process-of-law clause of the Constitution.

It is said in State ex rel. v. Calhoun, 234 S. W. 855, 857, that the test of when a writ of prohibition will issue is "whether the action of the court in entering and attempting to enforce the decree, upon this petition, takes on the form and character of an abuse of judicial power, although it concerned a subject-matter which belonged to a class over which respondent court had jurisdiction, as must be treated as being extrajurisdictional. This is the test."

Another matter for consideration is whether plaintiff, as owner of 30 shares out of 88,500 shares of common stock, preceded by 10,000 shares of preferred stock, has such interest in the property and business of the Fulton Iron Works Company as warrants the trial court in appointing a receiver of such property and business at her instance. That a person maintaining the suit must have a beneficial interest to be enforced or preserved is a truism. Certainly property will not be taken from the owner and put in the hands of a receiver unless the person asking such drastic action has a real rather than a technical interest therein. "A receiver may be appointed only when the party moving therefor has a legal or equitable right to apply for such relief. Applicant

must· have an interest in the subject-matter, and where he has no right to, interest in, or lien upon, the property in question, the appointment will be refused." [53 C. J. 27.] And in Ford v. K. C. I. Short Line Ry. Co., 52 Mo. App. 439, 450, the rule is stated to be: "It is, of course, essential that the petition show the plaintiffs have an interest in the subject-matter in respect to which they pray the appointment of a receiver." See also Merriam v. Railway Co., 136 Mo. 145, 160. Plaintiff has no interest other than as a stockholder. As a general rule, a stockholder has an interest in the property and business of the corporation, and this question arises here only because of the unusual allegations of the petition. To use a homely but expressive phrase, "did not plaintiff state herself out of court?" In determining this the allegations of the petition will be taken as true in defendant's favor, though later denied by it in this court. And this is true because plaintiff furnished the grounds on which the trial court acted and relator's denial was not before that court.

Referring then to the petition, which we have largely quoted, supra, we find that plaintiff alleges not only that the Fulton Iron Works Company is hopelessly insolvent, but specifically that its fixed and contingent liabilities, which plaintiff reduces to a certainty, amount to not less than $2,000,000, and its assets not to exceed $1,200,000; that defendant not only is, and for many months has been operating at a great loss, *"but that said company can not under any circumstances be operated at a profit."* The reason given for this is that the business in which the defendant company is and has been for many years engaged, to-wit, manufacturing machinery and equipment for making and refining sugar, has ceased to be profitable, "and that the market for such machinery and equipment now is, for a long time has been, and will continue to be extremely small and limited, and far less than is necessary to furnish sufficient business to justify the operations of defendant company's plant for said purpose; that the officers and directors of defendant company knew, and have long well known thereof, or in the exercise of reasonable business judgment should have known thereof, but nevertheless have continued operations in said manufacture at a loss as aforesaid; that by reason of the condition of the sugar industry and market at the present time, and for a long time heretofore, the purchasers or prospective purchasers of said machinery and equipment were unable to meet their obligations therefor, which was well known to said officers and directors of defendant, and is well known to said committee representing said group of creditors, but that, notwithstanding said conditions, they have caused and permitted the operation of said company at a loss as aforesaid, *which was inevitable,* and that they will continue to do so, as aforesaid, resulting in inevitable loss, unless prevented as prayed herein."

It is further alleged that because of the general demoralized condition of the sugar industry, which, the argument shows, was largely in foreign countries, the persons engaged in such industry who have bought defendant's products on credit to a large amount are unable to pay their notes and accounts to defendant, and most of same will be a loss. As the result of "the futile and imprudent" operation of the business, the defendant company is alleged to have notes and accounts receivable in excess of $200,000 on which only a small amount "can be realized," and has cashed and guaranteed like notes and obligations to the amount of $1,400,000, on which guarantee the defendant will lose to the extent of $1,000,000.

It is true that these conditions are alleged to have been brought about by "mismanagement" of the officers conducting the business, but obviously that is a mere assertion or conclusion of the pleader, not based on any alleged facts, but really refuted thereby. But the point we are considering is that if all these conditions exist, what possible benefit can accrue to this stockholder in a receivership? If the company is hopelessly insolvent and its assets cannot possibly pay its debts, and its business cannot under any circumstances be carried on at a profit because of the law of supply and demand, then the only thing that can be done is what should have been done earlier, to-wit, to close out the business, convert its assets into money and pay its debts as far as possible. In this only the creditors are interested.

It is said in 53 Corpus Juris 28, that a receiver will not be appointed unless there is a reasonable probability that the plaintiff will obtain the ultimate relief sought, and surely not where it is certain that he will not do so. And there are cases holding that a stockholder as such is not entitled to have a receiver appointed to administer property, the proceeds of which must necessarily go to creditors. [Wild v. Adams, Evans & Co., 191 N. Y. Supp. 399, 401; Gila Water Co. v. Witbeck, 29 Fed. (2d) 175, 177; Darragh v. H. Wetter Mfg. Co., 78 Fed. 7, 15.] In this view of the case, the allegation that defendant's officers and directors had to a large extent permitted a committee of creditors to direct the course of the business is to be commended rather than condemned, and if other creditors are not satisfied with this course, they, and not a small stockholder, should complain.

These and other facts of the case, rather than the briefs of counsel, press on us a consideration of the question whether the whole purpose and object of this suit is not, by means of a receiver, to wind up and liquidate the business of the Fulton Iron Works Company, sell its property, pay its debts, and put an end to the company as a going concern. According to plaintiff's statement of the present financial condition and inevitable future condition, that is the only thing to do. While the trial court has not gone that far, the prayer of the petition is that the receiver

be made permanent; that he take charge of the property, assets and business, collect its debts, compel the officers to account, collect damages if any due, "sell all the assets of the company to liquidate the business thereof," pay all debts, and divide the residue, if any, among the shareholders. All this is to be done by the receiver under the court's supervision, and the corporation becomes an empty shell. Perhaps the trial court would not go that far even if not prohibited, but that is what plaintiff wants.

The law is that, except in very exceptional cases, if any (Thompson v. Greeley, 107 Mo. 577, 587), proceedings by receivership are not maintained for the sole purpose of taking over, liquidating or closing out a business, returning, not the business and property, but the residue, if any, in money, to the owners. A receivership is merely an ancillary proceeding in aid of a pending suit involving property in order to preserve such property as far as practical till the termination of the suit in order that it may then go as the court directs. "The appointment of a receiver is made by a court of equity, in the performance of one of its prerogative functions, and as incidental to, and in aid of, its jurisdiction, in order to enable it to accomplish, as far as practicable, complete justice between the parties before it. It is one of the modes in which the preventive justice of a court of equity is administered; its object is to secure and preserve the property or thing in controversy, pending the litigation, so that it may be subjected to such order or decree as the court may make or render; and it is for the benefit of all concerned." [53 C. J. 19.] And at page 21 of this same work: "While the appointment of a receiver may be a part of the relief asked, such appointment is not final relief, nor is it the end or object of litigation; it is merely an ancillary, auxiliary, incidental, and provisional remedy, allowable only in, or in connection with, an action pending for some other purpose, and in which there is a prayer for other and final or ultimate relief, which the court has power and jurisdiction to grant, which justifies it in proceeding with the case, and to which the appointment of a receiver is an aid."

This court in Price v. Trust Co., 178 S. W. 745, states the law thus: "It is fundamental that there is neither in law nor in equity any such thing as a plain receivership action, i. e., an action in which a receiver is the only desideratum. In short, the appointment of a receiver by a court of equity, except in rare cases arising out of lunacy or infancy, is ancillary wholly to some other action having some definite relief in view. [State ex rel. v. Ross, 122 Mo. 435, 25 S. W. 947, 23 L. R. A. 534.] The receiver is 'the hand of the court' used to protect the property and to prevent waste, or to hold the property *in statu quo* pending the decreeing of the relief which is the crux of the case brought; so it necessarily follows that, absent a

cause of action stated in the main case, there is no ground for the appointment of a receiver. [Cantwell. v. Lead Co., 199 Mo. 1, 97 S. W. 167; Pullis v. Pullis, 157 Mo. 565, 57 S. W. 1095.]''

In a later case this court, in State ex rel. v. Reynolds, 289 Mo. 506, 519, a case brought from the Court of Appeals by certiorari (State ex rel. v. Calhoun, 207 Mo. App. 149), and which received this court's approval, quoted and approved this holding and added: ''And a reference to the petition in the instant case, which is epitomized in the opinion of the Court of Appeals, discloses that a receiver was the only *desideratum* contemplated thereby. Hence the judgment of the Court of Appeals, instead of being contrary to the Price case, is consonant therewith.''

In Commonwealth Finance Corp. v. Missouri Motor Bus Co., 233 S. W. 167, it is correctly said: ''The sole purpose of the appointment of a receiver is to control and preserve property pending litigation, that the relief awarded, if any, may be effective.''

It is held in State ex rel. v. Foster, 225 Mo. 171, 192, that a court of equity has no power to dissolve a corporation and wind up its business by a receivership. And if the appointment of a receiver and investing him with power to collect the debts of the corporation, assemble and dispose of all its property, pay its debts and distribute the residue, if any, to the stockholders, does not work a dissolution of the corporation, then what would?

The respondent relies on Section 4597, Revised Statutes 1929, and State ex rel. v. Reynolds, 275 Mo. 113, 204 S. W. 1093, as conferring power and jurisdiction on the circuit court to appoint a receiver to liquidate and wind up the business of corporations. That statute has been in force for thirty years, and while it confers very broad powers on the courts to appoint receivers at the instance of stockholders of corporations whose officers and directors are ''mismanaging or wasting the property, effects and assets of said corporation,'' a reading of that section shows that it applies only to corporations formed in countries outside of the United States. This fact seems to have been overlooked by the court in State ex rel. v. Reynolds, last cited, supra, where the court was discussing the appointment of a receiver of a Delaware corporation. The point directly before the court in that case was the jurisdiction of the St. Louis Court of Appeals to interfere by prohibition in a case where the appeal, if any, would be to this court and not the Court of Appeals. What was said otherwise was by way of argument and cannot be taken as overruling any of the cases we have cited.

The result is that our preliminary rule in prohibition should be made absolute. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by Sturgis, C., is adopted as the opinion of the court. All of the judges concur.