1180

E. R. HANDLAN, Plaintiff, v. A. H. HANDLAN ET AL., Appellants, W. STONE MADDEN ET AL., Respondents.

STATE ex rel. HANDLAN-BUCK COMPANY, a Corporation, ET AL., Relators, v. EUGENE J. SARTORIUS, etc., Respondent, Nos. 42779, 42783 and 42784—247 S. W. (2d) 715.

Court en Banc, March 26, 1952.

Rehearing Denied, April 14, 1952.

*Flynn & Parker, Francis C. Flynn* and *Norman C. Parker* for appellants and relators.

*Wilton D. Chapman* for respondent W. Stone Madden, Receiver.

*Sievers, Reagan & Schwartz* and *Adolph K. Schwartz* for respondent
Wilton D. Chapman, Attorney for Receiver.

*Wilton D. Chapman* for respondent Eugene J. Sartorius, Judge.

*John J. Nangle* pro se.

*Gleick & Strauss* pro se.

ELLISON, C. J.—The first of these three consolidated cases is an appeal from the lower court's allowance of receiver's and attorneys' fees. The second is an original proceeding in prohibition and the third in mandamus, both to dislodge the receiver after the controversy between the actual parties had been settled, but before the allowances to the receiver and the attorneys had been paid.

The litigation below involved two affiliated corporations in St. Louis, the Handlan-Buck Company, a manufacturing concern, and Handlan, Inc., a sales organization. The underlying controversy was between two brothers, E. R. Handlan, plaintiff here, and defendant A. H. Handlan, one of the appellants. They were the principal stockholders in the two corporations, both of which were solvent but unable to function successfully because the two brothers did not agree upon the policies and operations of the two companies. That controversy was decided on September 11, 1950, by Division I of this court in Handlan v. Handlan, 360 Mo. 1150, 232 SW. (2d) 944, hereinafter referred to as case No. 41,287.

The decision ordered that the Handlan-Buck Company be liquidated within six months unless the deadlock between the two brothers be broken, and that both companies continue under a receivership established by the circuit court in that case in 1947 until that was done. That objective was attained on April 11, 1951, when the appellant A. H. Handlan purchased all the stock of the plaintiff E. R. Handlan in both corporations.

Thereupon the trial court promptly cancelled a pending order for a liquidation sale of the assets of the Handlan-Buck Company, and on motion of the appellant A. H. Handlan vacated certain previous injunctive orders made in 1948 restraining him from participating in the affairs of the two corporations while they were under receivership. But nevertheless the court left the corporations in the hands of the receiver and directed all concerned to file applications for final fee and expense allowances on or before May 1, 1951. These were set

for hearing from time to time until the hearings were completed on June 1, 1951. About three weeks later, on June 20, the court fixed the allowances involved here as shown in the first column of the table next below:

| | Final allowances made June 20, 1951 | Total previous allowances | Total of all allowances |
|---|---|---|---|
| John J. Nangle, Attorney for both corporations | $ 5,000.00 | $ 16,000.00 | $ 21,000.00 |
| Gleick & Strauss, Attorneys for plaintiff E. R. Handlan | 5,000.00 | 51,500.00 | 56,500.00 |
| Wilton D. Chapman, Attorney for receiver | 40,000.00 | 30,000.00 | 70,000.00 |
| W. Stone Madden, Receiver for both corporations | 25,000.00 | 52,000.00 | 77,000.00 |
| | $ 75,000.00 | $149,500.00 | $224,500.00 |

Some two weeks later, on July 6, 1951, both corporations and A. H. Handlan, the owner thereof, filed here an original petition in prohibition against the trial judge based on the ground that the two corporations were solvent, but that their liquid assets were insufficient to finance current operations, and it was alleged the respondent trial judge lacked jurisdiction to perpetuate the receivership after the controversy between the parties had been settled, and should be prohibited from interfering with or exercising jurisdiction over the two corporations, now under the single ownership of the petitioner A. H. Handlan.

Likewise on the same day both corporations and A. H. Handlan filed here a petition for mandamus in which they sought to compel the trial judge to order both corporate properties restored to A. H. Handlan as owner. In that petition they alleged they had paid all fees allowed by the court to the attorneys and receiver prior to June 20, 1951, as shown in the above table, except a past due balance of $2500 to receiver Madden, and of $10,000 to Gleick & Strauss, attorneys for E. H. Handlan.

These two past due allowances plus the $75,000 final allowances granted by the court on June 20, made the total amount the corporations then owed for attorneys' and receiver's fees alone $87,500. And there were other approved but unpaid receivership expenses such as $4304.54 connected with the aforementioned Handlan-Buck Company receivership liquidation sale, which had been cancelled. All these totaled nearly $92,000.

This prohibition petition conceded the financial condition of both corporations was precarious as regards liquid assets, and that as of

June 28, 1951, their overdrafts were more than $18,000 in the sense that they were withholding their issued checks in that amount until their bank balances would meet them. Further it conceded all liquid assets (cash and bonds) held at the beginning of the receivership had been expended; that there was not enough cash on hand to meet immediate obligations; and that it might not even meet the two corporations' payrolls. Nevertheless the petition declared their *general* assets were far greater than their liabilities, and on that theory asked that the receiver be discharged, notwithstanding the two corporations then owed $110,000 or more [the $92,000 and $18,000] and had nothing but slow capital assets with which to pay their debts. So much for the general facts.

█ Taking up first the two proceedings in prohibition and mandamus. Messrs. Flynn and Parker, attorneys for appellants A. H. Handlan and the two corporations who filed them, devote thereto only two pages in their main brief and two pages in their reply brief. Appellants' theory is that after the Handlan brothers had adjusted their differences on April 11, 1951, and the main case between the two had been settled on its merits, there was no reason for a receiver any longer, and the trial court should have discharged him, and restored possession of the property of both corporations to appellant Handlan, who owned all the capital stock in both.

On that point appellants cite two cases, State ex rel. Kopke v. Mulloy, 329 Mo. 1, 14(5), 43 SW. (2d) 806, 812(6), and State ex rel. Metropolitan Land Co. v. Douglass (Mo. App.) 83 SW. 87. Neither is in point in our opinion. The first of these decisions merely held that a receivership proceeding in equity will seldom lie to liquidate a corporation. But every effort here has been to avoid that, although case No. 41,287, supra, did order a liquidation of the Handlan-Buck Company in six months if the Handlan brothers could not compose their differences.

The second case held a trial court must obey the mandate of an appellate court in equity. It is cited on the theory that when the two Handlan brothers "broke the deadlock" by their settlement of April 11, 1951, the receiver should have been discharged at once under the mandate in case No. 41,287, and that the trial court here is exceeding its jurisdiction in "needlessly perpetuating the control of the receiver." The effort below was to comply with the decree and mandate in that case, wind up █ the receivership and pay the costs. But the valid fee allowances and other costs were payable out of the property in the hands of the receiver, as was expressly held in case No. 41,287, supra, 360 Mo. l.c.1169-70, 232 SW. (2d) l.c.953, and they also were costs under the statute, Mo. R.S.1949, §515.260, V.A.M.S. We think appellants are in error in saying the receiver should have been discharged as soon as the Handlan brothers settled their differences, and *before* the fees and costs of the receivership were fixed and paid

1188

out of the receivership property. For this reason we rule against appellants' contention in the prohibition and mandamus appeals, No's 42,783 and 42,784.

■ Next we consider the allowances of attorneys' fees and expenses made by the trial court, of which appellants complain. Preliminary to that, however, Messrs. Nangle and Chapman, two of the attorneys to whom such allowances were granted, make the point that appellants failed to file a motion for new trial below, and consequently waived their right to contest the allowances on appeal, citing R.S.Mo.1949, §510.340, V.A.M.S. But this is a non-jury case and R.S.Mo.1949, §510.310(4), V.A.M.S. applicable to cases tried upon facts without a jury, provides: "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court. The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature." This is such a case. And our Rule 3.23 expressly excepts from its requirement that a motion for new trial be filed, non-jury cases in which are involved "questions of the sufficiency of the evidence to support the judgment." See also 2 Carr, §813, p. 880; Seabaugh v. Garver Lbr. Co., 355 Mo. 1153, 1167(5), 200 SW. (2d) 55.

In reply to that these attorneys cite 2 Carr, Missouri Civil Procedure, pp. 566-7, which reprints a published discussion of our Civil Code Act of 1943 by Judges Hyde and Douglas of this court dealing with the "Preservation of Matters for Judicial Review." It states that what is now R.S. Mo. 1949, §512.160, V.A.M.S. covering questions considered on appeal "must mean that to be preserved for appellate review, all matters [other than the three excepted] upon which any claim of error is based * * * must have been presented in some way to the trial court." But one of those three exceptions is the provision in §510.310, supra, that the question of the sufficiency of the evidence to support the judgment may be raised on appeal whether or not it was raised in the trial court. The attorneys and receiver here did present their claims and evidence below and the appellants duly appealed from the trial court's orders making the several allowances. This assignment is overruled.

■ Reverting to the issues on the allowance of attorney fees. Mr. John J. Nangle has been attorney for both corporations from the beginning of the litigation, and has already been paid $16,000 out of receivership funds, of which $6000 was allowed in case No. 41,287. His application for a final allowance of $5000 was granted by the trial court, and is contested on this appeal.

In support of that allowance his application and testimony detailed his professional activities in case No. 41,287, supra, such as study of the transcript and adversary briefs therein, legal research and preparation of a brief "for respondent Nangle", which he argued here. After our opinion in that case went down he worked on two after trial

motions, and appeared here on another motion to modify our decree, and in the circuit court on the adjustment of its decree to conform to our opinion and mandate: In addition to that he worked for 35 successive days on a Johnson-Fuller case pending in the Federal Court in St. Louis but originating in California, in which Handlan, Inc. in receivership was a party. California counsel was employed, and he (Nangle) incurred $176.50 expenses therein. From time to time his attention to it was required from January to July 5, 1950.

Further, his exhibits listed five items between July 13 and October 31, 1950, covering union labor controversies at the plants in receivership and 15 items covering his activities in the litigation between February ▇ 15 and April 20, 1951. These consist of letters received and sent, and conferences with other counsel in the pending litigation; the receiver's advertisement of the liquidating sale and the discontinuance thereof; and appearance in court in connection therewith, and on the joint motion of the several counsel to fix a time for making fee allowances, and at the court hearing thereon.

Mr. Nangle has been attorney for both corporations since the inception of this litigation. His total allowances prior to the one here involved were $16,000. The matter of fixing attorney fees is a matter of expert opinion based mainly on the amount involved, the results obtained, and the time devoted to such professional services. The composite opinion of the court is that the final allowance of $5000 made by the trial court should be disallowed and reversed. But if, as alleged, Mr. Nangle advanced $176.50 expenses to California counsel in the Johnson-Fuller case, he should be reimbursed therefor.

Messrs. Gleick and Strauss, attorneys for the plaintiff E. R. Handlan, also were granted a final allowance of $5000 as a receivership outlay. This, with preceding allowances, makes their total fees $56,500. They do not complain of the final allowance, but assert it should be taxed against the two corporations under receivership. And that is what the trial court did. The appellant A. H. Handlan asserts he and his brother E. R. Handlan had a personal agreement whereby the latter would pay that allowance. The written agreement offered in evidence [Exhibit 6, item 6] shows that to be the fact. This court finds the $5000 final allowance was excessive, and holds it should be disallowed and overruled as against the funds in receivership.

The trial court granted Mr. Chapman, attorney for the receiver, a final allowance of $40,000, which with previous allowances made his total compensation $70,000. He had served in that capacity for four years and two months, beginning in March, 1947. His office kept a partial diary of his engagements on these receivership matters. It shows 379 of them over that period, most of them being conferences with the receiver or attorneys representing other parties to the litigation. But 104 of them were with, or concerned, employees belonging to the A.F. of L., C.I.O. or Steel Workers' Union, or office employees, regarding

renewal of their contracts, wage increases, holidays, recreational facilities, union jurisdiction and the like. A few of these controverted matters were taken to the U.S. Labor Conciliator. Other engagements concerned taxes, cashing securities to pay attorneys' allowances or other outlays. Some of the conferences took a half-day or more and some were at night. And a considerable number of the matters involved had to be submitted to the trial court including the receiver's periodical and special reports.

As counsel for the receiver Mr. Chapman was required to deal with five separate litigations connected with or impinging on the receivership: case No. 41,287, supra; the instant case; the Johnson-Fuller case, supra, which was settled; a Rafferty suit for commissions brought by a former salesman for Handlan, Inc., and a land partition suit between members of the Handlan family, in which he filed an intervening petition and established an equitable lien on the interests of some of the coparceners, and collected $49,323.82 for the receiver. The trial of case No. 41,287 began on March 1, 1948 and continued for eleven days. The record here consists of nine volumes containing 2127 pages, Mr. Chapman appearing in this court on the appeal therein but making no argument.

As heretofore stated, following the decision here in that case the trial court ordered a receiver's liquidation sale of the Handlan-Buck Company, but the two Handlan brothers settled their differences privately two days before the sale date and on joint application of counsel the court rescinded the sale order. Following that efforts were made to wind up the litigation and fix the final fee allowances to the several attorneys and the receiver. This latter was done but the trial court refused to discharge the receiver until all matters connected with the receivership had been settled, including the payment of those fees. In all these matters Mr. Chapman represented the receiver.

Aside from the legal work he has done, one important question bearing on his proper compensation is the value of the property involved. The receiver had a firm of consulting engineers in St. Louis appraise the value of the Handlan-Buck Company [the one that was to have been sold]. Their appraisal showed the present value of the physical plant and equipment to be $414,780, and the going value $650,200. A real estate expert appraised the value of the real estate where it was located at $35,000. Inasmuch as the plant was about to be sold during the crux of this four year litigation we take the present value as the proper one to consider, without reference to going value or good will. On that basis the present value of the plant and real estate was about $450,000. There was no appraisal of the value of Handlan, Inc., the other corporation, but the receiver testified its value was at least as much, making a total of $900,000.

We find no other evidence on that point aside from the receiver's reference in his petition for a final fee allowance to case No. 41,287,

supra, 360 Mo. l.c.1162-3, 232 SW. (2d) l.c.948-9, where the opinion set out the financial statements of both corporations for the years 1947 and 1948 showing their fixed assets. For the Handlan-Buck Company, including land, buildings and equipment, patents, insurance and good will, they were shown to be $242,801.11 in 1947 and $255,904.57 in 1948. For the same years the fixed assets of Handlan, Inc. were stated as $228,703.81 and $272,861.19. The latter corporation was not shown as owning any land. This may cast some doubt on whether the same properties were worth $900,000 or more when the final fee allowances were made in the summer of 1951.

Mr. Chapman testified at some length at the hearing on his own final fee allowance as to the work he had done, but declined to say what he thought the allowance should be. He preferred to leave that to the court. But on cross-examination by appellant's counsel, Mr. Parker, he readily stated his opinion that a fair compensation to him would be $60,000. Messrs. J. H. Drucker and attorneys at the St. Louis bar, testified as expert witnesses. Mr. Drucker thought a retainer of $10,000 or $15,000 plus an allowance of $10,000 to $12,000 per year for the four years two months Mr. Chapman had been employed, would be a reasonable fee. These totaled from a minimum of $51,667 to a maximum of $65,000. Mr. Gilbert thought a reasonable allowance would be $1,000 per month, or $50,000 for four years two months. He has been paid $30,000. We think he should receive $25,000 more.

Next, and finally, the allowances to the receiver are to be adjudicated. The total allowances to him by the trial court were $77,000. Most of the facts have already been covered as regards the legal work done. He has served as such since February 19, 1947, first as temporary receiver and since August 16, 1947 as permanent receiver under a $100,000 bond, until our telegraphic stop order was sent on September 10, 1951, in the mandamus case involved here. During that time he had served as the executive head of both corporations involved, subject to the orders of the trial court. However, throughout that same period Mr. George T. Carmody, who previously was Comptroller and Vice President of both corporations, continued to serve in those capacities, and Mr. Leo J. Trudell, the Secretary-Treasurer and Auditor of Handlan, Inc. and Auditor for the Handlan-Buck Company, also remained in those positions. Further, after A. H. Handlan had become the owner of all the stock in both corporations, and the injunctive restrictions against his activities had been rescinded, he served in some executive capacity at a salary of $12,000 per year.

The receiver testified that he was connected with no other business and at first would go to the office of the corporations every day both morning and afternoon. For the first year and a half he was there more or less every day. After that he went "spasmodically". But he had daily reports ▮▮▮ from Messrs. Carmody and Trudell. And he

was *available* "24 hours a day". He signed all checks and sales contracts. After he had ceased going to the plants regularly, in his absence these would be brought to him for his signature at the DeSoto Hotel where he lived. He went with salesmen in some instances, solicited business himself directly or indirectly, and on two occasions discharged employees. In other words he was responsible for the management of both corporations including the purchase of materials and supplies, the sale of their products and the collection and disbursement of their funds. He would negotiate with the labor unions through Mr. Carmody, and attended the conferences and hearings on such matters with his attorney, Mr. Chapman.

He also was familiar with the litigation in which the corporations were engaged, such as case No. 41,287 supra; the Johnson-Fuller and the Rafferty cases, and the partition suit between members of the Handlan family. And he attended some of these trials. When the liquidation sale of the assets of the Handlan-Buck Company was in prospect he prepared, or had prepared, the brochure to attract bidders, caused the assets to be appraised, and otherwise tried to stimulate the bidding.

Mr. John O. Price, a certified public accountant, testified at the trial below. He audited the consolidated financial statements of both corporations for a period of fifty months down to April 1, 1951. He found the total sales volume of both corporations during that time to be $3,753,000, and the net profit after all charges were deducted was $26,000. But the deductions included "special charges" of about $182,000, which he assumed were expenditures in this litigation up to that time. He added them to the $26,000 net profits, thereby making the total profits $208,000, which was slightly in excess of a 5.5% return on the sales volume during the fifty months. Witness Price also expressed the opinion that the two corporations were better off than they had been in February, 1947, when the receiver took charge because, while their current assets were reduced about $12,000 their liabilities also were reduced about $42,000. And their inventories had increased $166,000.

Mr. Carmody, comptroller of both corporations, testified that the receiver came to the office of the two corporations only twenty times in 1947, three times in 1948, once in 1949 and once since January 1, 1950. He said he consulted the receiver only on extraordinary business matters, and was directed by the latter to continue operating the business as it had been before. No drastic changes were made. The receiver did not look at the mail. His chief function was signing checks and contracts with railroad and industrial customers.

Mr. Trudell, the secretary-treasurer of Handlan, Inc., gave almost identically the same testimony as to the receiver's infrequent appearances at the corporation offices. A sales agent, Nordman, throughout the receivership, saw the receiver in the office not to exceed ten

times. Factory superintendent Staub saw him at the office only once in the fifty months. Mr. Hagnauer, a warehouse supervisor for Handlan, Inc. saw the receiver at the office fifteen times at most. He was the messenger who delivered the checks at the DeSoto Hotel for the receiver to sign. He would leave them for him there and call for them in the afternoon. The receiver's counsel challenges this line of testimony, saying Messrs. Carmody and Trudell cooperated with the receiver until the instant litigation began.

Without reviewing the evidence further, we hold that the $52,000 in allowances already granted to Mr. Madden, the receiver, by the trial court is adequate compensation for his services, and that he should not be paid the final allowance of $25,000 made by the trial court and involved here.

Accordingly, it is ordered, adjudged and decreed that the final allowance of $5000 each to Mr. Nangle and Messrs. Gleick and Strauss; the final allowance of $40,000 to Mr. Chapman, attorney for the receiver, and the final allowance of $25,000 to Mr. Madden, the receiver, all be disallowed and reversed; but that a final allowance of [722] $25,000 be and hereby is granted to Mr. Chapman, attorney for the receiver. This, with the $30,000 he has already received, will make his total $55,000, the total allowances to the three other claimants remaining as shown in the second column of the table set out near the beginning of this opinion, unless, as regards Mr. Nangle, it be shown he paid $176.50 expenses to a California attorney in the Johnson-Fuller case.

It is further adjudged and decreed that any unpaid balances on allowances heretofore made, and on those granted herein, be charged as costs and made an equitable lien on the assets of both corporations.

■ Due to the protraction of this litigation the interests of the two corporations here involved have been adversely affected, and it should be closed without further delay. The appellant A. H. Handlan is now the owner of all the stock in both corporations, and may by advancing any necessary funds to the corporation, or by giving a proper bond, facilitate the termination of the case and the performance of the final decree, 75 C.J.S., § 92, pp. 738-9. It is ordered and decreed that the trial court follow that course.

The litigated judgment and orders of the trial court herein reviewed are reversed and the causes remanded for further proceedings in conformity herewith.

*Conkling, Tipton, Leedy, Hollingsworth* and *Hyde, JJ.,* concur; *Dalton, J.,* concurs in separate opinion in which *Conkling* and *Hyde, JJ.,* concur.

■ DALTON, J. (concurring).—I concur in the opinion of Ellison, C. J., but I feel that it should be understood that we are not ruling the propriety of the amounts allowed Mr. John J. Nangle, Messrs.

Gleick and Strauss and the Receiver prior to June 20, 1951. As I view the assignments, such issues are not before us on this appeal. Nor should the decision in this case be understood as a determination of the liability of the receivership for the amounts allowed to Mr. John J. Nangle and Messrs. Gleick and Strauss prior to June 20, 1951. No such issue has been presented to us for determination on this appeal.