STATE OF MISSOURI at the relation of LEO J. SCHOENFELDER, Relator, v. WILBUR J. OWEN, Judge of Division Two of the Circuit Court of Jasper County, and J. E. WOMMACK, Receiver.—152 S. W. (2d) 60.

Division Two, June 10, 1941.

■■■■■■■■■■■■■■■■■■■

*Clifford Casey* and *C. S. Walden* for relator.

*Robert E. Seiler* for respondents.

COOLEY, C.—  This is an original proceeding in prohibition filed in this court by Leo J. Schoenfelder, as relator, against Honorable Wilbur J. Owen, Judge of Division Number Two of the Circuit Court

of Jasper County, Missouri, and J. E. Wommack, as respondents, whereby relator seeks to prohibit respondents from proceeding further in the enforcement of an order whereby respondent judge appointed respondent Wommack as receiver to take charge of the property of relator. The appointment was made in a certain cause pending in said circuit court wherein the Installment Finance Company, a Missouri corporation, is plaintiff and relator Schoenfelder is defendant and was made by respondent judge in vacation without notice to Schoenfelder or giving him opportunity to be heard. Our preliminary writ issued, to which respondents have made return. The relator filed reply thereto and then filed motion for judgment on the pleadings, and the cause was thereupon submitted to this court upon that record. We, therefore, look to the pleadings for the facts. The finance company, which we shall herein refer to as plaintiff, filed its petition on November 16, 1940. On the same day summons was duly issued and served upon the defendant, Schoenfelder, returnable to the succeeding January Term of the circuit court to be begun on January 6, 1941. Relator's application for our writ was filed November 28, 1940, notice of intention to apply for such writ having been served upon respondents on November 20, 1940.

Plaintiff's petition in the circuit court is in two counts. In the first it pleads its incorporation and that the defendant owned and operated a used car lot for the display and sale of used cars and trucks on leased premises at 927 Main Street, Joplin, Missouri, under the trade name of Schoenfelder Motor Company, on which lot were located the cars and trucks mentioned in the petition; that under the contract between the parties the plaintiff is entitled to an assignment of the lease on said premises. Said first count then avers that on July 1, 1940, the defendant, Schoenfelder, executed and delivered to plaintiff his promissory note in the sum of $20,000, which the petition says "is hereto attached, marked Exhibit A, and made a part hereof;" that there has been paid on the note the sum of $1868.53; leaving a balance due under the written contract referred to of $18,522.55, with interest thereon at the rate of six per cent per annum from November 1, 1940; that on said July 1, 1940, the plaintiff and defendant entered into a written contract, "same being hereto attached marked Exhibit B and made a part hereof," whereby in consideration of said note and assignment of said lease on the used car lot the plaintiff sold to defendant thirty-four used cars and trucks "described in the schedule attached to said contract," and all interest of plaintiff in Schoenfelder Motor Company "which said corporation was later dissolved by unanimous consent of the stockholders thereof and the assets received by the defendant;" that as security for the payment of said note and faithful performance of said contract, defendant, on said July 1, 1940, executed and delivered to plaintiff a "purchase chattel mortgage" covering said thirty-four cars and trucks and the

office building and garage, office furniture and garage equipment, formerly belonging to the Schoenfelder Motor Company, a corporation, "said purchase chattel mortgage being hereto attached, marked Exhibit C, and made a part hereof;" that by the terms of the contract the defendant was permitted to sell any of said thirty-four cars and trucks and it was agreed that plaintiff would release same from the lien of its mortgage, provided, however, that upon the sale of each car or truck the defendant would pay plaintiff to apply on its note a sum equal to ten per cent of the "allocated value" assigned to said car or truck in the mortgage, and would hold the balance of the money received from such sale to be used in the purchase of a car or truck of the same or later year manufacture to replace the one sold, and would promptly give to plaintiff a chattel mortgage on any such car or truck so purchased to secure payment of the note and performance of the contract; and that the contract further provided that the defendant should at all times keep the allocated value of said cars and trucks so mortgaged within $3000 of the balance of said note; that the contract further provided that in event of default in the performance thereof, or any part thereof, or in the event that plaintiff deems said debt insecure, the whole sum of said debt and note should become immediately due and payable. The petition then alleged that plaintiff had fully performed the contract on its part that the defendant has failed and refused to perform in that he has failed and refused to use the proceeds of the sale of cars and trucks covered by the mortgage to purchase "suitable" cars to replace those sold, and has converted the proceeds thereof "and certain of the cars released from the lien of said mortgage" to his own use and has failed to use said proceeds as provided in the contract, "and although defendant has purchased certain cheaper and other model automobiles with part of said proceeds he has failed and refused to execute and deliver to plaintiff chattel mortgages on cars purchased with said proceeds and has sold and is now selling and attempting to sell said automobiles for his own benefit, including the following automobiles, to-wit: (Here follows a list of eight cars, giving make and motor number) on each of which . . . plaintiff is entitled to a chattel mortgage as aforesaid . . . and as to which, in equity and good conscience, plaintiff has a lien for payment of said note and performance of said contract;" that defendant has failed and refused to keep the allocated value of said cars and trucks mortgaged to plaintiff within $3000 of the balance on said note (the petition does not allege the value of the cars and trucks and other property which defendant had on hand); that by reason of the premises the entire balance of said note is due and payable under the terms of the contract and mortgage; that plaintiff has demanded payment which was refused. Said count prays judgment for $18,522.55.

The second count is in equity wherein plaintiff asks for appointment

of a receiver. It alleges that the cars and trucks are being used, operated and sold by defendant in disregard of plaintiff's rights, as above set forth, and that thereby "plaintiff's said security for the payment of said note and performance of said contract is rapidly disappearing; that plaintiff has retained a lien on the following described automobiles covered by said purchase chattel mortgage and any said subsequent chattel mortgages executed by defendant, and on which plaintiff has not released said liens, to-wit:" (Here follows a list of fifty-six cars and trucks, giving make and motor numbers). The petition then alleges that plaintiff is entitled to maintain and assert a lien on all of the "following described automobiles" which have been purchased by defendant with the proceeds of automobiles originally covered by said chattel mortgage and sold by defendant and as to which defendant has failed to give plaintiff a chattel mortgage in violation of the contract, to-wit: (Here appears list of the same eight cars above enumerated, alleged to have been purchased with proceeds of sold cars); that plaintiff is entitled to maintain and assert a lien "on all automobiles so purchased by defendant and in possession of defendant, of which plaintiff has not been notified or of which plaintiff has no knowledge or means of information;" that in equity such liens should be foreclosed and the property sold to pay the note. The petition then alleges "plaintiff further states that defendant is insolvent; that said automobiles are rapidly depreciating in value and being removed by reason of the fact that defendant is constantly using, demonstrating and exposing same and selling and offering same for sale and converting said automobiles and the proceeds to his own use, particularly in case of automobiles which defendant has refused to mortgage to plaintiff after buying same with proceeds of mortgaged cars as aforesaid, and as to which automobiles plaintiff is entitled in equity and good conscience to maintain and assert a lien; and by reason of failing to replace the automobiles which are sold with automobiles of like or similar quality and by the action of defendant in purchasing and offering to plaintiff older model automobiles of less value; that by reason of the foregoing plaintiff's security is rapidly being destroyed and lessened and will depreciate further unless the court appoints a receiver to take charge of said automobiles and the certificates or evidences of title of same and the other property described in said purchase chattel mortgage and hold the same pending trial of this cause."

The petition then alleges in general terms that the plaintiff had no adequate remedy at law and that without interposition of a court of equity plaintiff will be irreparably damaged and will suffer irreparable injury. There are further general allegations to the effect that unless a receiver is appointed and the property brought into court at once and before notice can be served on the defendant the plaintiff will be jeopardized in "the safety, delivery, custody and

control of the automobiles and the certificates and evidences of title thereof and the other property herein referred to'' and that said automobiles, and particularly the automobiles on which defendant has refused to execute chattel mortgages, would be sold and disposed of and the certificates of title to same would be removed and hidden.

The petition prays for the appointment of a receiver to take charge of all the property referred to in the petition; that such property be sold and the proceeds applied toward payment of the note; that the defendant be ordered to turn over the property to the receiver and that the receiver hold same ''pending final disposition of the issues herein with power to sell the same or any part thereof subject to the approval of the court'' and that the côurt enjoin defendant, his agents, etc., from interfering with, transferring, selling or disposing of any of said property or from taking possession of same.

Relator's application for our writ epitomizes the allegations of plaintiff's petition and alleges further that on the day said petition was filed summons returnable to the January, 1941, term of court was issued thereon and served upon him; that without notice to relator or giving him opportunity to be heard, respondent judge, in vacation of court, issued the order appointing the receiver; that the receiver so appointed immediately took possession of all of the property and assets described in the petition and remained so in possession, excluding relator therefrom; that there is no showing of an imperative necessity for the order appointing a receiver; that the plaintiff's petition did not disclose that the defendant in said circuit court action, relator here, was insolvent and in effect that in so appointing a receiver respondent judge acted in excess of his. lawful power and jurisdiction. Relator further alleges that his business was the sale and exchange of motor cars and that the enforcement of the order appointing a receiver will result in tying up and destroying his business and causing him irreparable loss and damage.

The contract referred to in plaintiff's petition and also referred to by respondents' counsel in their brief filed herein was attached' to the plaintiff's petition. That document is long and need not be here set out. It recites that Schoenfelder owned twenty-four shares of the par value of $2400 and that the finance company owned one hundred and forty shares of the par value of $14,000 in the then corporation called Schoenfelder Motor Company, constituting, it appears, the entire capital stock of said corporation and that the corporation was to be dissolved and its assets turned over to Schoenfelder, who would thereafter conduct the business individually; that said finance company should transfer to Schoenfelder its said one hundred and forty shares of stock in the motor company and the thirty-four used cars and trucks above mentioned then owned by it. Schoenfelder was to give the finance company his note for $20,000 and to secure same a chattel mortgage on the cars and on the buildings and other improvements,

including office furniture and garage equipment then owned by the motor company, which corporation was to be and was dissolved. The mortgage was duly executed and delivered. The contract authorized Schoenfelder to sell cars, pay ten per cent of the allocated value to the finance company and reinvest the remainder of the proceeds in other cars of the same or a later year's model, upon which cars so purchased he was to give the finance company a chattel mortgage, and that Schoenfeder would maintain the allocated value of cars and trucks owned by him and covered by the mortgage to·within $3000 of the balance on the note. It contained a further provision requiring the finance company to furnish Schoenfelder each month a statement of debits and credits and on the note and requiring Schoenfelder to furnish the finance company each month a list of cars and trucks on hand, and that the finance company should have the right, by its representative, to go upon Schoenfelder's premises at any reasonable business hour and verify statements furnished by Schoenfelder by examination of his books and records or to make an independent check of the cars and trucks and other property on hand. In the contract the value of the motor company capital stock then owned by the finance company and transferred to Schoenfelder is listed at $14,000. The contract also lists "note of motor company held by finance company, dated October 21st, 1939, $1,854.00; thirty-four cars and trucks being sold to Schoenfelder by finance company $4,146.00," making up the total of $20,000 for which the note and mortgage were given.

In the returns to our preliminary writ filed here by respondents, respondent Wommack claims to be exercising no judicial power, but acting only by virtue of his appointment by respondent judge. Said respondent judge admits the filing of the petition in the circuit court, the issuance and service of summons upon Schoenfelder; alleges that said circuit court action was a civil suit of which the circuit court has exclusive original jurisdiction, and in substance that in issuing the order 'appointing the receiver he exercised his sound discretion, believing that a situation was presented requiring summary relief to prevent immediate irreparable injury, and that a receiver was necessary for the preservation of the property in its then *status*; that notice usually given "is not a prerequisite under the pleadings, facts and circumstances of this particular case, where the property in question was in danger of being dissipated and removed from the jurisdiction of the court and irreparable injury and damage was threatened and rights of parties impaired;" that he was satisfied that the "interest of the parties" would be protected and promoted, and the rights of neither party would be unduly infringed upon by the appointment of a receiver to preserve the *status* of the property "until a hearing could be had the week of January 6th, 1941, same being the opening date of the January Term."

In his return, respondent judge then denies that "there was no showing of an imperative necessity for the order made in order to prevent failure of justice;" denies that the petition failed to disclose the insolvency of defendant or failed to present a condition calling for an appointment of a receiver. The return further states that the order appointing a receiver did not prevent the filing of a motion at any time to revoke the appointment and the offering of evidence in support of the same. Except for the specific denials, just referred to above, the return does not deny the facts stated in relator's application for our writ.

In the order appointing the receiver the learned circuit judge stated that he found from the petition certain facts set out, which are substantially as stated in the plaintiff's petition in the circuit court. It is clear that the said finding was based solely upon the allegations of plaintiff's petition. The order appointing Wommack receiver with full authority to enter immediately into possession of the property, to the exclusion of all other persons, directed the receiver to keep true accounts of his proceedings and report to the court at such time as he might be ordered so to do, and that he "conserve and protect the property during this cause" and remain in exclusive charge of the property "until he is discharged according to law." It further provided that the order should take effect immediately upon the receiver giving bond in the sum of $5000. The foregoing sufficiently outlines the facts to be considered in disposing of the case.

▮ In our opinion the learned circuit judge exceeded his legitimate authority in appointing the receiver without notice to relator, defendant in the circuit court action, and without giving him any opportunity to be heard. Not only was the appointment made without notice but in the order appointing the receiver no time or place was named when and where the defendant might show cause why the order should not be continued in force. The circuit court, over which respondent judge presides, is a court of general jurisdiction and has jurisdiction of the class of cases to which the action therein instituted by the plaintiff belongs. But prohibition may be invoked to restrain the enforcement of orders beyond or in excess of the legitimate authority of the judge though the court over which he presides has general jurisdiction of the class of cases to which the one in question belongs. "Where a court or judge assumes to exercise a judicial power not granted by law, it matters not (so far as concerns the right to a prohibition) whether the exhibition of power occurs in a case which the court is not authorized to entertain at all, or is merely an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by the court or judge in question." [St. Louis, Kennett & Southern Railroad Co. et al. v. Wear, 135 Mo. 230, 256, 36 S. W. 357, 358.]

▮ While in exceptional circumstances a receiver may lawfully

be appointed without notice to the adverse party, there must be shown, in order to justify such drastic action, an imperative necessity therefor to prevent a failure of justice. In State ex rel. Kopke v. Mulloy, 329 Mo. 1, 43 S. W. (2d) 806, the court, at page 810 of 43 S. W. (2d), quoted with approval the rule as stated in 53 C. J., p. 59, sec. 54, thus:

" 'A receiver may be properly appointed without notice, and before giving the adverse party an opportunity to be heard, in, and only in, an extreme and exceptional case, in which there is great emergency and an imperious and most stringent necessity for an immediate appointment, as where the adverse party is out of the jurisdiction of the court or cannot be found and served with notice, or, for some other reason, it is absolutely and imperatively necessary for the court to interfere, before the lapse of the time required to give notice and afford a hearing, to prevent loss, waste, destruction, irreparable injury, or the defeat of the petitioner's rights, or the giving of notice would jeopardize the delivery, safety, custody or control of the property over which the receivership is to be extended, and the rights of the complaining party may be amply and sufficiently protected in no other way, or by no other remedy, such as a temporary injunction or restraining order.' "

The court further said in the Mulloy case, quoting from St. Louis, etc., Railroad Co. v. Wear, supra: "The facts which justify the appointment of a receiver, without notice to the party whose possession is disturbed, are exceptional, at best. Nothing but the plainest showing of an imperative necessity for such an order, to prevent a failure of justice, should move a court to grant a motion to that end." The court cited other cases of like import, and said in this and in other states the appointment of a receiver "in violation of the rule of law just stated" is illegal and void and affords ground for prohibition; and further, citing Rees v. Andrews, 169 Mo. 177, 69 S. W. 4, that all the cases concur in holding that before such an order (appointing a receiver) is made the persons to be affected must have notice and an opportunity to be heard and that the only exceptions to this rule are: "First, where the defendants are non-residents, or conceal themselves to prevent service of notice; and, second, where irreparable injury will probably ensue if the property is not brought into court at once, and before notice can be served." [43 S. W. (2d) supra, l. c. 810.] ■■■ 53 Corpus Juris, page 60, section 54, also states that some authorities hold that even where there is an emergency a temporary receiver should be appointed only until a day fixed for a hearing on a rule to show cause, citing in footnote, among other authorities, St. Louis, etc., Railroad Co. v. Wear, supra. The Wear case so holds. In that case the circuit judge in vacation and in chambers (as here) had made an order appointing a receiver, without notice to the adverse parties, directing such receiver to take posses-

sion and charge of the properties of the defendants and to hold and manage same "until the further orders of the court," directing the defendants to surrender possession to the receiver, and directing the defendants to appear before the judge at the next term of the court, then three months in the future, to show cause why the receivership should not be continued "pending a hearing upon the merits." This court said, 135 Mo. l. c. 261, 36 S. W. 357, that the order plainly contemplated that the receivership was to continue at least until the next term of the court "then three months off" and (l. c. 262) that no temporary receivership can rightfully be set up to last three months without first affording a hearing to the party whose possession is to be disturbed; that if the court had been in session, so as to permit immediate application to modify the order, the relief then possible might affect the applicability of a prohibitory writ, "But the facts here are different. In vacation, at least, a party should not be obliged to hunt up the judge for a correction of an order made in excess of his power in the premises." The court further said, 135 Mo. l. c. 262, 36 S. W. 357, that the right to appoint a temporary receiver in vacation is limited by the necessity from which alone the right to make such appointment springs, and added:

"No court in Missouri may, without notice, declare a receivership (pending suit) for a longer time than is fairly and reasonably requisite to allow the defendant, whose possession is invaded, to show cause against a further continuance of the receivership. What is such reasonable time will depend on the circumstances of each case. But we have no doubt that three months is beyond (and very far beyond) any reasonable day for the showing of cause."

And the court further said (same page) that when a judge in vacation deems the exigency sufficiently great to warrant an *ex parte* order for a receivership of property, such as that there in question, he should by the same order appoint a very early day for the showing of cause against the order so that the defendants "may then have opportunity for the motion to vacate which the statute permits."

In the case at bar it is patent that notice could have been speedily and easily served upon Schoenfelder and an opportunity given him to be heard in opposition to the application for receivership. It is not claimed that he was a nonresident of Jasper County or that he was concealing himself so as to make service of notice impossible or impracticable. He was engaged in business in Joplin and the record before us concedes, virtually at least, that he resided there. Summons to Jasper County, returnable to the next term of court, was issued for him in plaintiff's suit on the same day the suit was filed and was there served the same day. Not only was no notice given him of the intended immediate appointment of a receiver but no time was fixed by the order of appointment for him to be heard in respect thereto. The order apparently contemplated that the receivership should con-

tinue at least until the beginning of the next term of court, thus denying the defendant possession of his property and the right to conduct his business for a period of nearly two months.

As we have noted, respondent judge concluded from the allegations of plaintiff's petition that there existed an emergency necessitating the immediate appointment of a receiver without notice. We do not think so, but think the petition clearly failed to disclose such necessity. The petition contained this allegation: "Plaintiff further states that defendant is insolvent; that said automobiles are rapidly depreciating in value and being removed by reason of the fact that defendant is constantly using, demonstrating and exposing same and selling and offering same for sale and converting said automobiles and the proceeds to his own use, *particularly in case of automobiles which defendant has refused to mortgage to plaintiff after buying same with proceeds of mortgaged cars as aforesaid,* and as to which plaintiff is entitled in equity and good conscience to maintain and assert a lien; and by reason of failing to replace the automobiles which are sold with automobiles of like or similar quality and by the action of defendant in purchasing and offering to plaintiff older model automobiles of less value; that by reason of the foregoing plaintiff's security is rapidly being destroyed and lessened and will depreciate further unless the court appoint a receiver to take charge of the property," etc. (Italics ours.)

As to the bare allegation "that defendant is insolvent" such allegation was held in Bushman v. Bushman, 311 Mo. 551, 279 S. W. 122, to be a mere conclusion. The allegation there was "that the said Estelle Peper Bushman is insolvent." This court held that it was "insufficient as a statement of one of the essential conditions necessary to be pleaded and proved to authorize the court to appoint a receiver;" that by every principle of pleading the facts and circumstances should have been stated from which the insolvency of the defendant would be made to appear and that in the absence of such allegations the circuit court was not authorized to exercise the power invoked. [See said case, 311 Mo. l. c. 564, 279 S. W. l. c. 126 (9, 10).] The Bushman case was followed by the St. Louis Court of Appeals in Pesch v. Boswell, 84 S. W. (2d) 151, where a similar allegation as to insolvency was held insufficient.

In the case at bar the plaintiff's petition in the circuit court contained some indirect references, rather by way of mere implication than statement, to a supposed possibility that there may have been some cars other than those mentioned held by the defendant and which he had not reported to plaintiff. In this connection we may recall incidentally that by its contract plaintiff had the right to go upon defendant's premises and inspect his books and records and make such further investigation as it desired in order to verify his reports to it or to satisfy itself as to what cars he had; and there

is no allegation in the petition that the defendant had cars elsewhere than on the premises where he conducted his business. We think the fair interpretation of plaintiff's petition is that plaintiff's complaint was as to the defendant's alleged misconduct in regard to the eight cars specifically mentioned on which the defendant failed to give mortgages, and to his alleged purchase of inferior cars with proceeds of some cars sold (number and value not stated) to take the place of those sold, if any, and to the defendant's alleged failure to keep the "allocated value" of the cars mortgaged within $3000 of the amount of the debt to plaintiff. The "allocated value" of the mortgaged cars was not stated except for the lump sum valuation, $4146, of the thirty-four cars sold by finance company to Schoenfelder, forming part of the consideration for the note. The mortgage, which was referred to in and copy of which was attached to the petition, covered, with other property, sixty-four cars, values not stated in the record before us. The mortgage also covered the building used as an office building by the defendant, with its office furniture and the garage and garage equipment, the value of none of which was stated in the petition. Also, the petition showed that the plaintiff still held a mortgage on fifty-six cars owned by the defendant, the value of which was not stated. The petition contained no allegation showing or tending to show that the defendant did not own property, subject to execution, other than that covered by the mortgage and the eight cars on which it is alleged he failed to give mortgages.

■ We have examined the cases cited in respondents' brief but do not find them in conflict, the facts considered, with our conclusion herein. In one, State ex rel. Brncic v. Huck, 296 Mo. 374, 246 S. W. 303, 305, it is said that the general rule is that an application for a writ of prohibition will not be considered unless a plea to the jurisdiction has been filed and overruled in the lower court or such court has been asked in some form, without avail, to refrain from further proceeding or to dismiss the same. But this court further said, "An exception to this rule is recognized where a want or excess of jurisdiction is apparent on the face of the record." We think it apparent on the record in the instant case that respondent judge acted in excess of his authority and that our preliminary rule in prohibition should be made absolute. It is so ordered. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.