STATE of Missouri ex rel. William James HOUSER, Relator,

v.

The Honorable Arthur U. GOODMAN, Jr., Judge of the Circuit Court of Dunklin County, Missouri, Respondent.

No. 8614.

Springfield Court of Appeals.

Missouri.

Sept. 1, 1966.

Ford, Ford & Crow, Wendell W. Crow, Kennett, for relator.

McHaney, Billings & Welman, William O. Welman, Kennett, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

PRELIMINARY WRIT OF PROHIBITION MADE ABSOLUTE

TITUS, Judge.

Respondent, Judge of the Circuit Court of Dunklin County, issued the herein complained-of order in a damage suit filed by Erma Brumley against William James Houser, the relator. The circuit court action ensued from an accident involving automobiles operated respectively by Mrs. Brumley and relator and, according to plaintiff's petition, caused her to suffer "painful and disabling

injuries" to most every particle of her body, which injuries "are permanent and progressive in nature" and have caused, inter alia, diminution of "her ability to work, labor and enjoy life."

Relator propounded interrogatories to be answered by Mrs. Brumley. Of the thirteen interrogatories posed, eight were followed by subinterrogatories (two to fifteen in number) which required response only if the principal question was answered in the affirmative. Summarily, the interrogatories inquired concerning Mrs. Brumley's accident injuries, identity of persons and institutions which furnished medical care, her employment, earnings, and the expenses incurred because of the casualty. The interrogatories also sought information of "other automobile accidents" and data as to "any medical care or treatment" plaintiff had received in the ten years before the accident. Interrogatory numbered nine (which followed the inquiry of "other automobile accidents") queried: "Have you ever sustained any injuries either before or after the date of the incident complained of in your petition, other than as set out in your answer to the preceding question. If so, please state: [a] When were you so injured? [b] How were you injured? [c] What is the name and address of the doctors who treated you?"

Mrs. Brumley filed her objections "to the interrogatories * * * for the following reasons: 1. That the number of said interrogatories is such as to constitute oppression; [A] Said interrogatories call for a minimum of one hundred ninety-two answers by plaintiff. Wherefore, plaintiff prays for a protective order as provided in Rule 57.01[c]."[1]

Thereafter respondent entered his order that: "Defendant withdraws interrogatories 3-H to 3-O inclusive. Plaintiff's objections as to interrogatories 9 to 9-C inclusive sustained and overruled as to the remaining Interrogatories. Ordered that no deposition shall be taken of Plaintiff concerning any matter covered by these Interrogatories."

█ Relator brings this original proceeding in prohibition seeking restraint on the enforcement of the last two sentences of respondent's order. Irrespective of jurisdictional limitations placed upon this court in appellate processes (which are not here involved), we have concurrent jurisdiction with the Supreme Court as to all "original remedial writs," including prohibition. V. A.M.S. Constitution, Article V, Sec. 4; State ex rel. City of Mansfield v. Crain, Mo.App., 301 S.W.2d 415(2) ; State ex rel. City of Creve Coeur v. Weinstein, Mo. App., 329 S.W.2d 399, 401.

On July 21, 1966, relator served respondent with a copy of his petition for writ of prohibition herein, together with written notice said petition would be filed in this Court on July 28, 1966, which was done. Thereafter, we initially issued a preliminary writ in this case prohibiting respondent from enforcing the last sentence of his order and set August 19, 1966, as the date for him to appear and show cause, if any he had, why the preliminary writ should not be made permanent or an immediate rule in prohibition should not be ordered. Subsequently we were informed the Circuit Court case had been set for trial on August 24, 1966. This setting date has been confirmed by respondent in his return to the preliminary writ, and he also states the setting was made on July 25, 1966. As it appeared to us relator would not have a reasonably sufficient time to depose plaintiff unencumbered by respondent's order after this Court could determine this matter and before the circuit court case was set for trial, we issued an amended preliminary writ wherein respondent was additionally prohibited from trying said circuit court case, from setting

---

1. Parenthetically we note that without answering interrogatories 9 to 9-C, inclusive, Mrs. Brumley used but thirty-eight sentences in answering the questions, including such a sentence as "No."

it for trial, and from exercising any further jurisdiction in that matter until the further order of and final judgment of this Court. In respondent's return he has admitted the factual allegations of relator's petition, including the entry of the order, supra, but has denied, among other things, he has done anything to oppress relator or that the interval between August 19, 1966 (assuming we could have determined this matter on that date), and August 24, 1966, was an insufficient time for relator to depose plaintiff unshackled by his order. Respondent did not file suggestions in opposition to issuance of the initial or amended preliminary writ.

 The Rules of Civil Procedure afford discovery methods designed to eliminate elements of surprise often employed as sandbags to dam the flow of information and impede the disclosure of truth. Discovery should provide a party with access to anything relevant to the proceedings and subject-matter of the case not protected by privilege.[2] Regardless of this and other multitudinous pronouncements of a similar ring, and the fact "The supreme court rules are quite clear and * * * have been further construed and defined by decisions of the appellate courts of this state," such courts continue "to receive an inordinate and apparently unnecessary number of applications to regulate the use of interrogatories" and other discovery procedures. State ex rel. Hof v. Cloyd, Mo. (En Banc), 394 S.W.2d 408, 411. Perchance this adversity springs from a misunderstanding by trial courts and counsel as to the impact of numerous denials of applications for remedial writs. That peremptory writs have been used to review interim orders in discovery cases does not mean these discretionary writs will or should issue in each case where the court opines the trial court's

interim order was erroneous. Unless there appears no other wholly adequate means of redress, the parties in most cases (as is true of most other interim orders) must be confined to a review of the order on appeal from the final judgment. Appellate courts cannot serve as a scullery to scour every misstep of the trial courts. Ergo, a trial court may not always take solace in the fact a writ is denied because refusal of such writs does not, per se, mean the trial court is error-free and counsel has wrongfully employed the discovery device.[3] These asides are wishfully supplied for the edification of both trial lawyers and trial courts, coupled prayerfully with a desire they may also serve both again as a revelation of the purposes of discovery procedures and be used accordingly. "Whether questions are proper in form and substance is," in the first instance, "for the determination of the trial court; and the court should keep in mind that if an objection is sustained the interrogator has the right to reframe and resubmit the question in proper form or to propound additional ones. 'The number of interrogatories or of sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, undue expense, embarrassment, or oppression. * * *' Civil Rule 56.01(a), V.A.M.R." State ex rel. Hof v. Cloyd, supra, Mo. (En Banc), 394 S.W.2d 408, 411–412.

The reference made to interrogatories under Rule 56.01(a), V.A.M.R., has a bifold aspect, id est, (1) the number of interrogatories in a given set, and (2) the number of sets of interrogatories. Mrs. Brumley's objections to relator's interrogatories were confined to the first aspect by claiming "the number of interrogatories is such as to constitute oppression." When she married her objections to the interrogatories with a prayer for a protective order

2. Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L.Ed. 451; State ex rel. Iron Fireman Corp. v. Ward, 351 Mo. 761, 173 S.W.2d 920, 922; Glick v. McKesson & Robbins, Inc., D.C.Mo., 10 F.R.D. 477; Rule 57.01(b), 4 RSMo 1959, p. 4976, V.A.M.R. 41–82, p. 195.

3. Oceanside Union School District, etc. v. Superior Court, 58 Cal.2d 180, 23 Cal. Rptr., 375, 373 P.2d 439, 442, note 4; State ex rel. City of Mansfield v. Crain, supra, Mo.App., 301 S.W.2d 415, 419–420.

under Rule 57.01(c), it was required that such application for order be made by written motion (Rule 74.02, V.A.M.R.) wherein she obligated herself to "state with particularity the grounds therefor" and to set forth "the relief or order sought." Rule 55.30(a) V.A.M.R. She did neither. Had respondent found, in fact, the number of interrogatories in the one set proffered to be oppressive, the expected ruling would be for the court to sustain the objections to relator's interrogatories in their entirety and thus leave to relator the burden of thereafter filing another set of interrogatories containing a reasonable number of questions, or pursuing his search for information via deposition, or down other paths of discovery. Stephen Amusement, Inc. v. Paramount Film Distributing Corp., S.D.N.Y., 4 F.R.Serv.2d 33.353, Case 2. That respondent did not rule on Mrs. Brumley's objections in the expected manner and did not state the number of inquiries constituted oppression, permits us to infer respondent considered the quantity of questions imposed no undue burden on Mrs. Brumley. No specific objections were lodged against interrogatories numbered 9 to 9–C. What was said by the Supreme Court in State ex rel. Hudson v. Ginn, Mo. (En Banc), 374 S.W.2d 34, at page 37, would indicate these questions were germane to the subject matter involved. Nevertheless, we do not undertake to speculate why respondent singled out these interrogatories in the penultimate sentence of his order. What has previously been observed would indicate relator is not without other or similar procedures to secure the information sought by interrogatories 9 to 9–C, or to secure redress by other means if respondent did, in fact, err in his ruling relative thereto.

We now oscillate our attention to the last sentence of respondent's order wherein he "Ordered that no deposition shall be taken of plaintiff concerning any matter covered by these interrogatories."

Rule 57.01(a), V.A.M.R., states that "Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both such purposes. After commencement of the action the deposition may be taken without leave of court. * * *" The authority granted by this rule (and under similar statutes) to take depositions has been held to be a "right" or "privilege" of a party to the litigation.[4]

While it is true Mrs. Brumley prayed "for a protective order as provided in Rule 57.01 [c]," her objections were directed to relator's interrogatories. The subject of depositions, as far as the record is concerned, was never broached and no notice had been served to take any depositions. Although it may have application to additional discovery devices through reference in other rules, Rule 57, V.A.M.R. concerns itself with depositions, and, dealing with protective orders, Rule 57.01(c) provides:

"After notice is served for taking a deposition, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order * * * that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters * * * or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or undue expense, oppression, or to compel a witness or party to make discovery."

Missouri Rule 57.01(c) is patterned generally after Federal Rule 30(b) with two notable exceptions. Rule 30(b) authorizes the Federal Courts to "make an order that the deposition shall not be taken" or to make an order the deposition "may be taken only upon written interrogatories." Missouri

---

4. State ex rel. Wilson v. Burney, 193 Mo. App. 326, 186 S.W. 23, 28; State ex rel. Methudy v. Killorem, Mo.App., 229 S.W. 1097, 1099; Woelfle v. Connecticut Mut. Life Ins. Co., 234 Mo.App. 135, 112 S.W.2d 865, 873; State v. Aubuchon, Mo., 381 S.W.2d 807, 812.

courts are, by implication at least, denied such authority but even with these added provisions of Federal Rule 30(b), Federal Courts are most reluctant to interfere with a party's right to take a deposition or limit its scope once that mode of inquiry has been selected. 4 Moore's Federal Practice, Sec. 30.09, p. 2031, and cases therein cited; 23 Am.Jur.2d, Depositions and Discovery, Secs. 245, 247, and 248, pp. 634–637. While respondent's order does not undertake to limit relator's discovery exclusively to interrogatories as to all inquiries, it will do a fair job of gelding relator's right to depose the plaintiff as to the most important elements of her claim if it is permitted to stand.

Insofar as depositions are concerned, it seems clear a trial court may make a protective order under rule 57.01(c) only after notice to take a deposition has been served, only after a motion for a protective order has been seasonably made, and only after movant shows good cause for protection. Not one of these components was in esse when respondent's order was entered.

 With few exceptions, the forte of any court is to relegate itself to limbo until presented proper pleadings to be employed as vehicles for judicial locomotion. Even in matters over which a court has general jurisdiction, it cannot, ex mero motu, set itself in motion nor have power to determine questions unless they are presented to it in the manner and form prescribed by law. Jurisdiction to decide concrete issues in a particular case is limited to those presented by the parties in their

pleadings, and anything beyond is coram non judice and void.[5] The fact depositions (after commencement of the action) may be taken without leave of court, indicates this is a phase of a case where a trial court should remain passive until prompted into action by the presentation of some appropriate pleading calling for its attention and action.

 As there was no notice outstanding to take depositions at the time respondent's order was made, as plaintiff had not moved for a protective order on depositions nor shown cause why one should be given, and because the order was obviously made by the court ex mero motu, we hold that respondent's order is void and made beyond his jurisdiction insofar as it ordered no deposition of plaintiff could be taken concerning a matter covered by relator's interrogatories.

While it is not always essential the remedy of prohibition be the only one that might be applied (State ex rel. St. Louis & K. R. Co. v. Hirzel, 137 Mo. 435, 37 S.W. 921, 924, 38 S.W. 961; State ex rel. Mack v. Scott, 241 Mo.App. 674, 235 S.W.2d 106, 109), in this instance we do not believe relator's other remedies are wholly adequate. There is usually no adequate substitute for taking the oral deposition of a witness or adverse party, Mr. Justice Whittaker has said "From my long experience at the Bar, I can readily agree that the device of * * * written interrogatories * * * except for proof of formal matters, is a tool of discovery very inferior to oral examination." Perry v. Edwards, D.C.Mo.,

<hr/>

5. State ex rel. McManus v. Muench, 217 Mo. 124, 117 S.W. 25, 29, 129 Am.St. Rep. 536; Riggs v. Moise, 344 Mo. 177, 128 S.W.2d 632, 635; In re Beauchamp's Estate, Mo.App., 184 S.W.2d 729, 734. 20 Am.Jur.2d, Courts, Sec. 94, p. 455, states: "The general rule is that a court cannot undertake to adjudicate a controversy on its own motion; it can do this only when the controversy is presented to it by a party, and only if it is presented to it in the form of a proper pleading. A court has no power either to investigate facts or to initiate proceed-

ings." Swing v. St. Louis Refrigerator & W. G. Co., 78 Ark. 246, 93 S.W. 978: "A court does not have * * * as a general rule, power to give judgment respecting a matter not submitted to it for decision, and over which it has jurisdiction." Sale v. Railroad Commission, 15 Cal.2d 612, 104 P.2d 38: "A court is a passive forum for adjusting disputes, and has no power either to investigate facts or to initiate proceedings. Litigants themselves largely determine the scope of the inquiry and the data upon which the judicial judgment is based."

16 F.R.D. 131, 133. Also, unless relator could establish himself as a clairvoyant with power to divine what questions would have been asked and what answers would have been given on an unobstructed deposition of plaintiff, we can foresee an insurmountable task for relator on appeal in convincing an appellate court concerning the materiality of respondent's error.

■■■■■ A writ of prohibition may be invoked to restrain the enforcement of orders beyond or in excess of the authority of the judge,[6] and to keep a court within the compass of its jurisdictional action as defined by law.[7] There can be no question that prohibition is the appropriate remedy to prevent a court from making an order it has no jurisdiction to make.[8]

There is no dispute the order in question was made and there appears to be no legal authority, under the circumstances in this case, for respondent making an order that no deposition of plaintiff should be taken concerning any matters covered by relator's interrogatories.

We do not see any justification in the delay or expense entailed in requiring briefs, argument, and submission at a later date.[9] Therefore, an immediate absolute rule in prohibition is ordered. Also, to insure relator may be afforded reasonable time after the date of our determination of this cause and the time the Circuit Court case may again be set for trial, we further now prohibit respondent from setting said case for trial or from trying said case prior to or before the 17th day of October, 1966.

STONE, P. J., and HOGAN, J., concur.

6. State ex rel. Gulf Oil Corp. v. Weinstein, Mo.App., 379 S.W.2d 172(2); State ex rel. Schoenfelder v. Owen, 347 Mo. 1131, 152 S.W.2d 60(1); State ex rel. Henry v. Cracraft, 237 Mo.App. 194, 168 S.W.2d 953; State ex rel. City of Mansfield v. Crain, Mo.App., 301 S.W. 2d 415(7).

7. State ex rel. Wilson v. Burney, supra, 193 Mo.App. 326, 186 S.W. 23; State ex rel. Leake v. Harris, 334 Mo. 713, 67 S.W.2d 981, 983.

8. State ex rel. Riggs v. Seehorn, 344 Mo. 186, 125 S.W.2d 851, 852; State ex rel. Lane v. Montgomery, 221 Mo.App. 1043, 295 S.W. 824, 825; Scarritt Estate Co. v. Johnson, 303 Mo. 664; 262 S.W. 373, 377.

9. State ex rel. National Outdoor Advertising Co. v. Seehorn, 354 Mo. (En Banc) 170, 188 S.W.2d 657, 660; State ex rel. Robertson v. Sevier, 342 Mo. 346, 115 S.W.2d 810, 116 A.L.R. 651; 42 Am.Jur. Prohibition, Sec. 43, p. 178, 73 C.J.S. Prohibition § 28, p. 106.