STATE of Missouri ex rel. Woodrow
KUBATZKY, Relator,

v.

The Honorable Ivan Lee HOLT, Jr., Judge
of the Circuit Court of the City of
St. Louis, Respondent.

No. 34404.

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 25, 1972.

William L. Clinton, St. Louis, for relator.

Carter, Bull, Baer, Presberg & Lee, Doris J. Banta, St. Louis, for respondent.

SIMEONE, Judge.

This proceeding involves the interesting but limited question of whether in an action for compensatory and punitive damages the trial court on pretrial discovery may seal the answers of defendants relating to their net worth so that relator and counsel may not examine them until a submissible case is made, at trial, on the issue of punitive damages.

■ This is an original action in prohibition[1] in which the relator, Woodrow Kubatzky, seeks to prohibit the respondent-judge from continuing a protective order[2] whereby answers to interrogatories relating to the gross earnings, income tax returns and net worth of certain defendants were sealed until a submissible case is made on the issue of punitive damages.

Relator, Kubatzky, on June 10, 1970, filed suit (cause No. 15974) in the Circuit Court of the City of St. Louis against defendants William Kotsrean, W. F. McDonnell and Charles Long, alleging that suit had earlier been instituted by the defendants against him and that said action was "unfounded, had no merit," "was for the purpose of harassment," and that it was "completely unfounded, illegal, oppressive, harassing and fraudulent. . . ." The petition was in two counts. Count I prayed for judgment "against all defendants in the sum of $70,300.00" as compensatory damages and Count II prayed for a judgment for punitive damages in the sum of $500,000.00.

Prior to the institution of this action, the defendants were the plaintiffs or amici curiae in a suit filed in the Circuit Court of St. Louis County against relator as director of Norwood Hills Corporation. The trial court in that action rendered judgment in favor of relator on the ground that there was insufficient evidence that relator had committed any of the acts. The judgment was affirmed by this court. Long v. Norwood Hills Corp., Mo.App., 380 S.W.2d 451.

Some years later, these defendants filed an action in the Circuit Court of the City of St. Louis (No. 2660 F) against relator alleging the same unlawful acts. In that suit, the Circuit Court of St. Louis sustained relator's motion for summary judgment. This action followed.

In due time, and on February 3, 1971, relator filed twenty-one interrogatories upon the defendants Kotsrean, McDonnell and Long. Interrogatory No. 4 requested the "gross income for the calendar year 1968, 1969 and 1970," withholding taxes for each of said years and requested a copy of the federal income tax returns for those years. Interrogatory No. 5 asked for the gross earnings and income for January 1, 1971 to the "present date." Interrogatory No. 19 requested the defendants to state their "present net worth" and for an itemized statement and description of all items constituting net worth.

---

1. We have concurrent jurisdiction with the Supreme Court, Art. V, § 4, Mo.Constitution, V.A.M.S. "The . . . court of appeals . . . may issue and determine original remedial writs. Supreme Court Rules 97.02 and 84.22, V.A.M.R.; State ex rel. Houser v. Goodman, Mo.App., 406 S.W.2d 121, and cases cited therein.

2. Rules 57.01(c) and 56.01(a). Rule 57.01(c) provides that the court may make any other order "which justice requires to protect the party or witness from annoyance, embarrassment, or undue expense, oppression or to compel a witness or party to make discovery." The last sentence of Rule 56.01(a) provides: "The provisions of Rule 57.01(c) are applicable for the protection of the party from whom answers to interrogatories are sought under this rule."

On February 23, 1971, defendants objected to all the interrogatories except Nos. 1 and 2 on the basis that the interrogatories sought privileged information and were asked for the purpose of harassment and moved for a protective order. The motion for protective order alleged that the "defendants state that there is a reasonable basis for the. Court to believe that the plaintiff may not establish facts sufficient to warrant submission of such issue [punitive damages] to the jury and that it is therefore now premature for plaintiff to demand evidence from these defendants which would not be admissible in the event that plaintiff shall fail to make a submissible case on such issue." They further complained that the interrogatories "require disclosure of highly confidential personal information" and the defendants are entitled to have the disclosure of such confidential information "protected." The defendants requested that the answers be treated in strict confidence and placed in safe custody and "remain sealed" and "not available to anyone for any purpose, including the plaintiff and his attorney, until such time as the trial of this case shall progress to a point where the trial judge is satisfied that plaintiff's evidence . . . establishes as a matter of law a submissible case on the issue of punitive damages. . . . "

On October 15, 1971, respondent entered his order sustaining objections to Interrogatories 6 through 18, and 20 through 21, overruling the objections to Interrogatories 4, 5 and 19 and sustaining defendant's motion for protective order and ruled that "The answers to said Interrogatories are to be filed under seal with the Clerk of this Court, and kept sealed until such time as the Judge trying the case rules that Plaintiff has made a submissible case on Count II. If the trial Judge rules that Plaintiff has, the sealed answers to the above Interrogatories are to then be delivered to Plaintiff's attorney. If the trial Judge rules Plaintiff has not, or Plaintiff dismisses Count II, the sealed answers to the above Interrogatories are to be delivered to defendants' attorney."

Relator then sought prohibition in this court. We issued our preliminary writ on November 29, 1971, returnable on or before December 29, 1971.

Respondent filed his motion to dismiss the petition and to quash the preliminary rule. Rule 97.03; § 530.050, RSMo 1969,[3] V.A.M.S. The grounds of the motion to dismiss stated that the petition fails to state facts "sufficient to constitute a claim" because no facts are set out in the petition which show that respondent has exceeded his jurisdiction in entering the protective order, that respondent is without judicial power to enter the order, or that the respondent abused his discretion. The motion further alleged that the petition sets forth no facts which show that relator would be prejudiced or that any inconvenience or injustice will be "visited upon relator," and that respondent, as a matter of law, has legal authority to make the protective order. The motion to dismiss was ordered taken with the case. The motion to dismiss the petition raises only legal issues to be determined on the facts well pleaded in relator's petition which here stand confessed. State ex rel. Hopkins v. Stemmons, Mo.App., 302 S.W.2d 51, 52.

Rule 97.02 and § 530.040 provide in part that "Applications for the remedy of prohibition . . . shall be made by petition, in which the substantive facts relied upon shall be stated . . . " It is generally stated that a petition for the writ must allege every fact requisite for its issuance. State ex rel. Brncic v. Huck, 296 Mo. 374, 246 S.W. 303. In this regard a petition for prohibition is no different from any other petition. Rule 55.06. "A pleading * * * shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief, . . . " Cf. Fed.Rule Civ.Proc. 8. In determining whether a petition states a

---

3. All references are to V.A.M.R. and RSMo.1969, V.A.M.S.

claim, the allegations thereof are to be given a liberal construction, giving the allegations their reasonable and fair intendment, and when so considered the petition is to be deemed sufficient if the averments invoke principles of law which entitled the plaintiff to relief. Slicer v. W. J. Menefee Const. Co., Mo., 270 S.W.2d 778; Hiltner v. Kansas City, Mo., 293 S.W.2d 422; and if the facts which are pleaded and all reasonable inferences to be drawn therefrom, looked at most favorably from the plaintiff's standpoint show any ground of relief, the petition should not be dismissed. Young v. Lucas Const. Co., Mo.App., 454 S.W.2d 638.

■ The petition for prohibition filed in this case states sufficient facts to show what action was taken by the trial court, what rules and statutes were allegedly not complied with and the relief sought. The fair implications of the petition are that the plaintiff required the information sought in order to prepare for trial and that such information was needed in the trial of the cause. We hold the petition sufficient to state a claim for the writ of prohibition and thus overrule respondent's motion to dismiss.

■ The next question presented in this original proceeding is the propriety of the remedy of prohibition. The essential function of the writ of prohibition is to confine a lower court within its proper jurisdiction and prevent it from acting without or in excess of its jurisdiction. It is not the function of the writ to control a trial court's discretion or direct how it may be exercised. State ex rel. Allen v. Yeaman, Mo.App., 440 S.W.2d 138, 145. While it has been said by our Supreme Court that "prohibition will not lie to control discretionary judicial action by a lower court,"

State ex rel. Norfolk and Western Ry. Co. v. Dowd, Mo., 448 S.W.2d 1, 4, and that the "presumption is that of right action on the part of the respondent," State ex rel. Boswell v. Curtis, Mo.App., 334 S.W.2d 757, 761, the writ is properly invoked to restrain the enforcement of orders beyond or in excess of the authority of the judge, and to keep a court within the compass of its jurisdictional action as defined by law. State ex rel. Houser v. Goodman, Mo.App., 406 S.W.2d 121, 127.

■■ Missouri courts have consistently held that prohibition is the proper remedy to review a trial court order improperly requiring discovery. State ex rel. Gray v. Jensen, Mo., 395 S.W.2d 143; State ex rel. Hof v. Cloyd, Mo., 394 S.W.2d 408. However, this position was modified in *Dowd,* supra. See Comment, Prohibition to Prevent Discovery Proceedings, 35 Mo.L.Rev. 533. But we are here not dealing with the propriety of the trial court ruling on interrogatories which are calculated to lead to the discovery of admissible evidence as in *Dowd,* in which case the remedy of prohibition may not normally be used. Rather we are dealing with the limited issue of whether the trial court's protective order in sealing the answers which prevents the relator or his counsel from examining the answer prior to trial is proper.

The resolution of this issue requires a delicate balancing of interests. On the one hand, a party prior to trial obtains personal information concerning the net worth and tax returns [4] of the other so that the answering party may be subject to annoyance or embarrassment as to his private matters. On the other hand, to seal the answers to the questions relating to personal information places counsel seeking such answers to interrogatories in a position whereby it is

---

4. Relator contends that tax returns are not subject to inspection citing O'Connell v. Olsen and Ugelstadt, D.C.Ohio, 10 F.R.D. 142; Austin v. Aluminum Co. of America, D.C.Tenn., 15 F.R.D. 490; Maddox v. Wright, D.C.D.C., 103 F.Supp. 400. The more recent view is stated in 4 Moore, § 26.61 [502] p 26–294, "The majority of courts have held, however, that copies of income tax returns in the possession of the party are not privileged, and that their production can be compelled in an appropriate case." See cases collected in Matchen v. McGahey, Okl., 455 P.2d 52.

difficult, if not impossible, to prepare for trial.

Since the adoption of the modern rules of discovery, the "Missouri discovery practice has been, overall, of great benefit in advancing the prompt and evenhanded administration of justice and disposition of cases." *Dowd, supra,* 448 S.W.2d 1. c. 4. The purpose of our discovery practice is to aid the litigants to find out *prior to trial* what the facts are so that substantial justice between the parties may be done. *Dowd, supra.* Civil trials today are no longer carried on in the dark so that counsel is deprived of proper trial preparation. See also State ex rel. Houser v. Goodman, *supra.*

The purposes of discovery are beneficial to the parties and their counsel. We believe that in view of the purposes of discovery practice, the respondent in this case exceeded its jurisdiction in sealing the answers to the interrogatories so that they could not be examined by relator or counsel prior to trial.

■ The law is clear that in an action seeking punitive damages, evidence of the defendant's financial worth is admissible and relevant. In Lewis v. Moody, Fla. App., 195 So.2d 260, petitioner filed an action against defendant seeking compensatory and punitive damages for assault. Proceedings for discovery under the pertinent Florida rule were had and plaintiff propounded interrogatories to defendant seeking the net worth of the defendant and the income for three previous years. The defendant objected to the interrogatories on the ground that the answers would be "immaterial and irrelevant to the litigation." The trial court sustained the objections and plaintiff filed his petition for "certiorari" under the practice in Florida.

The court ruled that the financial status of the defendant was relevant and subject to discovery. The defendant did not object on the ground that the details would tend to "embarrass and harass" him, but rather on the ground that no pretrial discovery as to financial worth should be permitted because such matters "will not be relevant and admissible unless and until, during the trial, the plaintiff first presents evidence which the trial judge determines is sufficient to support an award of punitive damages." The court said: "When a complaint contains allegations which if supported by evidence would justify allowance of punitive damages, pretrial discovery as to the financial worth of the defendant is proper . . . because it is 'relevant to the subject matter involved' and the evidence procured thereby may become admissible at trial." 195 So.2d at 261. The court therefore held that when punitive damages are prayed, the financial worth of the defendant is relevant and subject to discovery.

A case closer in point is Hughes v. Groves, W.D.Mo., 47 F.R.D. 52. There plaintiffs sued defendants for injuries sustained in an automobile collision alleging that defendant was driving while intoxicated. Plaintiffs prayed for compensatory and punitive damages. Defendants objected to the interrogatories asking for all assets and liabilities and gross earnings. The defendant urged that "more than a simple allegation and claim for punitive damages should be necessary to allow plaintiffs to discover information about defendants' finances and 'how much he is to be punished.'" The court held, however, that the law is well settled and contrary to that position. Information regarding damages is as discoverable as is that which pertains to liability. No *prima facie* showing in punitive damages is required to justify discovery. Judge Becker ordered the originals of the answers to be sealed and ordered counsel to treat the information as confidential until the time that it is offered in evidence at the trial. The court did not, however, order the information "sealed" so that counsel could not examine the answers, but only ordered the answers sealed to persons having no legitimate interest in them.

In Hauk v. Superior Court of Los Angeles County, Calif., en banc, 61 Cal.2d 295, 38 Cal.Rptr. 345, 391 P.2d 825, the Supreme Court of California held that it was an abuse of discretion to refuse to compel defendants to answer certain questions relating to the defendants' gains from business transactions until the plaintiff established his right to an accounting. The court quoted from West Pico Furniture Co. of Los Angeles v. Superior Court, 56 Cal.2d 407, 15 Cal.Rptr. 119, 364 P.2d 295: "The fact that a triable issue has not been determined cannot bar the disclosure of information sought for the very purpose of trying that issue."

While protective orders are often authorized in appropriate cases, no decision has come to our attention where it has been necessary to render a protective order to prevent disclosure to a party or counsel. Protection from public disclosure is the purpose advanced in 4 Moore, Federal Practice, Sec. 26.74: "By making an order that the deposition [interrogatory] shall remain sealed until ordered to be opened by the court, the court is able to prevent the deposition from being used for undesirable publicity purposes. By coupling such an order with an order that the examination shall be held with no one present except the parties to the action and their officers or counsel, the court may entirely remove the fear that the deposition is being taken for undesirable publicity purposes, or that confidential information will be generally disclosed to competitors." While protective orders are authorized in appropriate cases to protect a party from annoyance, embarrassment or oppression, such an order is to "be used sparingly in accordance with sound judicial discretion." Committee Note to Rule 57.01.

Respondent contends that he was empowered to exercise his judicial discretion to enter the order which protects the defendants from annoyance, embarrassment or oppression. Respondent relies on State ex rel. Boswell v. Curtis, Mo.App., 334 S. W.2d 757. There, in an action for alienation of affections, the joint income tax returns of defendant-relator and his wife were material and subject to discovery. The court stated, however, that "We apprehend that, notwithstanding the fact that a document may not be strictly privileged, its production may sometimes constitute 'an unreasonable invasion of * * * right of privacy.' . . . 'Justice to all concerned' may be considered in passing on whether the document is of such evidentiary value as to demand its production . . . And the court might in some instances be required to exercise discretion in determining whether a person not a party may be so unduly affected by the exposure of his or her private affairs as to overbalance the need for and value of the production of the document through the processes of discovery. Also we think the court might in its discretion hedge the examination of the document with such reasonable restrictions as are possible and practicable in order to protect the privacy in respect to matters not material to the case . . ." 334 S.W.2d at 763–764.

We believe that a court can hedge the examination of a document with such reasonable restrictions in order to protect the privacy of a party but we cannot construe this language to apply to a situation which deprives counsel of the opportunity prior to trial to examine answers to interrogatories which are relevant and material to an issue of damages. The right to non-disclosure of private affairs relating to the net worth of the defendants must be subservient to the discovery process as to the party and counsel if the discovery process is to be meaningful and substantial justice is to be done and practical trial problems avoided.[5]

Respondent further points out that the petition contains a single prayer for

---

5. Suppose that during the trial the answers are unresponsive or insufficient. Relator then may be entitled to a continuance with a case partially tried.

$500,000 punitive damages against all of the defendants. It is contended therefore that the petition would not warrant the discovery of the wealth of the defendants because such evidence "could not be introduced under this state of the pleadings." Respondent contends that if relator is to use such evidence he must elect to submit on punitive damages separately as to each defendant, a type of relief which he has not yet prayed for.

The rule in Missouri as to punitive damages when there are several defendants formerly was: "where a number of defendants are sued jointly, their wealth, either individually or collectively can not be shown for the purpose of punitive damages, for one defendant cannot be punished for the wealth of another." Thomas v. Durham Motors, Mo.App., 389 S.W.2d 412, 414 and cases cited. See also, Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43 relying on Washington Gas-Light Co. v. Lansden, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543; Stansberry v. McDowell, Mo.App., 186 S.W. 757.

■■■ But in State ex rel. Hall v. Cook, Mo., en banc, 400 S.W.2d 39, this rule was modified to the extent that if the "evidence supports such a separate submission the jury should be instructed that they may find punitive damages against several defendants in different amounts; and when this is to be done evidence of the wealth of each is admissible." l. c. 42. If the judgment obtained requires a lump sum verdict against all defendants evidence of the greater wealth of one would be error, but if the evidence supports a separate submission, punitive damages against several defendants may be imposed in different amounts. With the disclosure of the answers to counsel for relator, it would be incumbent on relator to plead and prove

punitive damages separately as to each defendant.

Finally, relator prays in his petition for an order "prohibiting respondent from continuing the said protective order, whereby the Answers to Interrogatories No. 4, 5 and 19 are sealed, and for a permanent writ of prohibition, which will allow this relator to proceed in accordance with our rules of civil procedure relating to Interrogatories and answers thereto . . . ." As stated, the respondent's order of October 15, 1971, ordered the answers to be kept sealed until such time as the Judge trying the case rules that plaintiff has made a submissible case on Count II. This order, in effect, prevented counsel for relator or the relator from examining the answers until a submissible case on punitive damages was made.

■■■ We hold only that the protective order sealing answers prior to trial is overbroad. We believe that a party and counsel of record should be permitted to examine answers relating to the issue of punitive damages prior to trial. While a party and his counsel should be permitted to examine answers prior to trial, in order to protect the defendants from unnecessary embarrassment, such permission may be conditioned upon such orders of the respondent to the relator and his counsel as may be necessary to protect the privacy of the defendants from others. Beyond permission of relator and counsel to examine answers on the issue of punitive damages, any further disclosure to others must be upon application to and approval of the respondent.

The preliminary writ heretofore issued is made absolute.

DOWD, P. J., and SMITH, J., concur.

KELLY, J., not participating.